ELIZABETH COHEE, APPELLANT, V.
RICK COHEE, APPELLEE.

317 N.W.2d 381

Filed March 19, 1982.  No. 43923.

Rae Ann Schmitz for appellant.

R. L. Gilbert for appellee.

Sarah J. Shofstall of Knapp, Mues, Sidwell, Anderson, Shofstall & Beavers and Judith I. Avner and Phyllis N. Segal for amici curiae NOW Legal Defense and Education Fund, Nat. Center on Women and Family Law, and The Center for a Woman's Own Name.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

A single issue is presented in this marriage dissolution case. When the parents disagree as to the surname of a child, does the District Court have jurisdiction to specify the name of the child, and if so, what standard or standards are to be used to guide the District Court in its decision?

The parties to this short-lived marriage were in their late teens at their marriage date, February 24, 1979. They separated in July 1979. The appellant, Elizabeth Cohee, was pregnant at the time of the separation. A child, which the appellant named Cory Martin Dugger (appellant's maiden name), was delivered February 28, 1980. Issues as to child support, custody, and property settlement were stipulated. The cause was submitted to the District Court.

The parties both agree that the marriage was irretrievably broken. The court, after hearing the evidence, dissolved the marriage, approved the property settlement, ordered appellee, Rick Cohee, to pay child support, approved the restoration of appellant's maiden name Dugger, and ordered the appellant to amend the birth certificate of the child to "(a) the surname of the Respondent, (Cohee) or (b) the hyphenated surnames of both parties, (Dugger-Cohee)." The appellee disputes

this reading of the decree insofar as the hyphenated name requiring his surname to be last. However, the record shows that the trial court meant that the hyphenated name should carry the last name of Cohee and not Dugger. Appellant appeals, asserting that the trial court erred in requiring that the child should bear the surname of his father, the appellee.

At common law, the interest of a father in having his child bear his surname was one of inherent concern. The custom of patrilineal succession dates back many centuries. Today, patrimonial control of surnames has virtually disappeared. Since the mid-19th century there has been much progression toward marital and parental equality. In Nebraska, we now have "no fault" divorce (Neb. Rev. Stat. §§ 42-347 to 42-364 (Reissue 1978)); the "tender years" doctrine has been abolished (*Turner v. Turner*, 205 Neb. 6, 286 N.W.2d 100 (1979)); no preference is given to either parent based on sex (§ 42-364(2)); a mother as well as a father is liable for child support (Neb. Rev. Stat. § 13-102 (Reissue 1977)); and each parent has an equal and joint right to custody of the children, with custody being awarded on the best interests of the child (*Kockrow v. Kockrow*, 191 Neb. 657, 217 N.W.2d 89 (1974); *Christensen v. Christensen*, 191 Neb. 355, 215 N.W.2d 111 (1974)). For a discussion of the father's surname preference rule and its history, see *In re Marriage of Schiffman*, 28 Cal. 3d 640, 620 P.2d 579, 169 Cal. Rptr. 918 (1980).

In refusing to allow the surnames of children to be changed from Spatz, the natural father's name, to Laflan, the name of the mother's second husband, we quoted with approval the Minnesota Supreme Court in *Robinson v. Hansel*, 302 Minn. 34, 223 N.W.2d 138 (1974): "'Society has a strong interest in the preservation of the parental relationship. Even though a divorce decree may terminate a marriage, courts have traditionally tried to maintain and to encourage continuing parental relationships. The link between a father and child in circumstances such as these is uncertain at best, and a change of name could further

weaken, if not sever, such a bond.'" *Spatz v. Spatz*, 199 Neb. 332, 334, 258 N.W.2d 814, 816 (1977). We further said in that case: "The question of whether the name of a minor child should be changed is to be determined by what is in the best interests of the child. The cases which have considered this question have granted a change of name only when the substantial welfare of the child requires that the name be changed. See Annotation, 53 A.L.R.2d 914. Generally, where the father has supported the children and exercised his visitation rights relief has been denied. A change of name has been granted where the father's name was positively deleterious to the child because of the father's misconduct and notoriety. Generally, minor embarrassment or emotional upset has been held not sufficient to require that a change of name be granted." *Id.* at 333, 258 N.W.2d at 815.

In 1977 the Legislature passed L.B. 72, now codified as Neb. Rev. Stat. § 71-640.01 (Cum. Supp. 1980), which provides in part: "The information pertaining to the name of an infant born in this state and reported on a birth certificate, filled out and filed pursuant to sections 71-601 to 71-648, shall comply with the following:

"(1) If the mother was married at the time of either conception or birth of the child, or at any time between conception and birth, the name of such mother's husband shall be entered on the certificate as the father of the child and *the surname of the child shall be entered on the certificate as being (a) the same as that of the husband, unless paternity has been determined otherwise by a court of competent jurisdiction, (b) the surname of the mother, (c) the maiden surname of the mother, or (d) the hyphenated surname of both parents.*" (Emphasis supplied.)

The appellant asserts that, in passing the act, the Legislature intended that the previous policy of the state automatically giving preference to the husband's surname was abolished, and each of the alternatives are of equal weight. She further argues that the trial court was not justified in finding that the best interests of the

child required that the hyphenated surname listing the husband's name last was in the best interests of the child.

"A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of the court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.

"Generally speaking, a statute should be construed so that an ordinary person reading it would get from it the usual accepted meaning. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not of creating it." (Syllabi of the court.) *O'Neill Production Credit Assn. v. Schnoor*, 208 Neb. 105, 302 N.W.2d 376 (1981).

We believe the intent of the Legislature is clear. Each subsection is of equal weight. To accord one subsection greater weight would be contra to the U.S. Constitution and our own Nebraska Constitution. The statute merely sets out the possible choices for the surname.

The floor debate concerning the passage of 1977 Neb. Laws, L.B. 72, in the Legislature, is instructive: "Senator Fowler: . . . Basically, Senator Marsh's bill as introduced discriminated against women and the decision of how last name would be assigned to a child because it gave the preference to the father's or the husband's last name. This amendment simply makes it an equal treatment, that is, that one among four choices could be used for the last name. Generally I think the custom will remain that it is the husband's last name will be assigned to the child but this amendment is to remove the discrimination that Senator Marsh over-looked in her bill. I would move that the amendment be adopted." Floor Debate, 85th Leg., 1st Sess. 183 (January 31, 1977).

The amendment was adopted unanimously and the bill was passed. We agree with the appellant's interpretation. No automatic preference as to the surname of a legitimate child now exists in Nebraska law. We believe each parent has an equal right and interest in determining the surname of a child.

Did the trial court have jurisdiction to determine surnames in a dissolution action where the parents disagree? It appears it did. Section 42-364 provides in part: "When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified . . . ." Courts have apparently assumed this additional chore as an incident of their equity jurisdiction in dissolution cases. See Annot., 92 A.L.R.3d 1091 (1979).

As we stated previously, the standard to be used in the accomplishment of this task is the best interests of the child, the same standard used in all cases involving custody and visitation of minor children. § 42-364. The parties do not contest this.

Other jurisdictions have considered a number of factors in determining the surname of a child: (1) Misconduct by one of the parents; (2) Failure to support the child; (3) Failure to maintain contact with the child; (4) The length of time a surname has been used; and (5) Whether the surname is different from that of the custodial parent.

Applying these suggested tests to the facts in this case, we see that no evidence was presented in the record to indicate that the appellee had been guilty of misconduct, or had failed to support the child. Further, the child bore the surname of the mother (maiden name) for a period of less than 1 year. The appellant asserts that the appellee was not really a father to the child, although he did acknowledge paternity of the child before trial, and 8 months after the child's birth. Appellant was granted custody of the child.

We consider and reject the trial court's reasons that the status of legitimacy would necessarily be raised by

different surnames of mother and son.

Considering the matter de novo, we conclude that the best interests of the child require that the child bear the hyphenated surname Cohee-Dugger. We refuse to suggest or hold that a presumption exists in favor of the custodial parent. However, custody, along with the other factors, is to be considered in determining the best interests of the child. The trial court is directed to amend its decree in conformity herewith.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., and McCOWN, J., concur in the result.

CLINTON, J., not participating in decision.