Jennifer L. KEEGAN, Plaintiff
and Appellant,

v.

Timothy A. GUDAHL, Defendant
and Appellee.

No. 18457.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1994.

Reassigned Oct. 5, 1994.

Decided Dec. 21, 1994.

Sean M. O'Brien, Brookings, for plaintiff and appellant.

Lee R. Burd, Sioux Falls, for defendant and appellee.

MILLER, Chief Justice (on reassignment).

Jennifer L. Keegan (Mother) appeals from a judgment and decree of divorce which amends and corrects the birth certificate of Lindsey Margaret Keegan (Daughter) by substituting "Gudahl" as her last name. We affirm in part, reverse in part, and remand.

## FACTS

Mother and Timothy A. Gudahl (Father) were not married when Daughter was conceived. At the time of Daughter's birth, however, Mother and Father had been married for six months. Daughter's birth certificate indicated that her name was Lindsey Margaret Keegan and that Jennifer L. Keegan was her mother. No information re-

garding Daughter's father was contained on the certificate.

When Daughter was approximately two months old, Mother instituted divorce proceedings. At some point in the divorce proceedings [1], Father requested that Daughter's surname be changed from Mother's (Keegan) to his (Gudahl). Mother resisted because she wanted herself, Daughter, and another child by a different father to have the same last name.

In addressing the parties, the trial court noted that it "would fly in the face of public policy to allow one parent to determine the name of the child. I guess I can't, you know, the public policy has always be [sic] that the child upon it [sic] marriage takes the patron name. That's the way we are in Anglo–Saxon society and our Anglo–Saxon tradition." The trial court made the following finding:

> With respect to the name, the court notes that the mother, although unmarried at the time of conception, married the undisputed father of the child, defendant, prior to the birth of the child.

The circuit court went on to conclude:

> Pursuant to SDCL 34–25–13.1 the name of defendant husband, that is, "Gudahl," shall be the last name of the child and her legal name shall be Lindsey Margaret Gudahl. Further, the name of the father shall be inserted on the birth certificate of the child as her last name and her birth certificate shall be so corrected.

## ISSUE

### DID THE TRIAL COURT ERR BY CHANGING DAUGHTER'S SURNAME FROM KEEGAN TO GUDAHL?

This case causes us to consider for the first time the authority of a circuit court sitting in a divorce action to change the surname of a child as part of the divorce. At the time of the parties' divorce, the South Dakota statute

governing child custody determinations in divorce cases stated:

> In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

SDCL 25–4–45.

The court's general jurisdiction to give "direction for the custody, care, and education" for children in divorce cases encompasses resolving disputes between parents as to the proper name of the child. Webster's Third New International Dictionary defines care as to "provide for or attend to needs or perform necessary personal services (as for a patient or a child)." Webster's Third New International Dictionary, Unabridged 338 (16th ed. 1971). In bestowing a name on a child, parents are providing for or attending to the child's needs. Under SDCL 25–4–45, giving direction for the provision of such care falls within the broad jurisdiction of a court engaged in dissolution proceedings.

Similarly, the South Dakota statute governing joint legal custody provides:

> In any custody dispute between parents, the court may order joint legal custody so that both parents retain full parental rights and responsibilities with respect to their child and so that both parents must confer on major decisions affecting the welfare of the child. In ordering joint legal custody, the court may consider the expressed desires of the parents and may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those aspects between the parties based on the best interest of the child. If it appears to the court to be in the best interest of the child, the court may order, or the parties may agree, how any such responsibility shall be divided. Such areas of responsibility may include primary physical residence, education,

1. The settled record reveals that Father made no formal request to the circuit court to change Daughter's surname. No request for such relief appears in Father's Answer and Counterclaim or any of his affidavits. In fact, in the Stipulation which settled the bulk of the issues in the di-

vorce, the parties refer to Daughter by the surname of Keegan. *See* Stipulation and Agreement ("The parties shall have joint care, custody and control of the minor child of the parties, namely: LINDSEY MARGARET KEEGAN, ..." Emphasis in original.)

medical and dental care, and any other responsibilities which the court finds unique to a particular family or in the best interest of the child. SDCL 25-5-7.1. The parties in this case stipulated to "joint care, custody and control of the minor child" and the trial court incorporated this stipulation into its judgment and decree of divorce.

■ The name a child carries is one of the first and most fundamental decisions that parents make. A child's name reflects tradition, heritage, and family pride. It is often a means of honoring loved ones and a way of giving a sense of belonging to the child. Naming an infant certainly constitutes a "major decision affecting the welfare of the child" and falls within one of the "responsibilities which the court finds unique to a particular family or in the best interest of the child." Under South Dakota's joint custody statute, then, the trial court had jurisdiction to decide how this major parental responsibility should be divided. The court's decision to allow the father to confer his name on the child was an exercise of its legitimate authority under SDCL 25-5-7.1.

■ Although we have not previously decided this question, several neighboring jurisdictions have addressed the issue of whether a trial court in a divorce proceeding has authority to change the name of a child and have come to similar conclusions. For example, the Nebraska code provided: "When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified...." Neb. Rev.Stat. § 42-364.[2] Relying on this statute and its equity jurisdiction in divorce cases, the Nebraska Supreme Court held that a trial court has jurisdiction to determine surnames in a dissolution action where the parents disagree on the child's name. *Cohee v. Cohee,* 210 Neb. 855, 317 N.W.2d 381, 384 (1982).

SDCL Ch. 25-4 grants the circuit court authority to restore a former name to the wife, although the chapter does not specifically address the power of the trial court to change the name of any other person, i.e. the husband or children of a marriage. SDCL 25-4-47.[3] Like the South Dakota Code, an Iowa statute provides authority to change a party's name in a divorce proceeding, but does not provide specific authority to change a child's name in that proceeding. *In re Marriage of Gulsvig,* 498 N.W.2d 725, 728 (Iowa 1993) (citing Iowa Code § 598.37).

Nevertheless, the Iowa Supreme Court concluded that authority to change a child's name pursuant to divorce proceedings can be inferred from the Iowa statute governing custody determinations. *Id.* This statute states in relevant part:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, ... and which will encourage parents to share the rights and responsibilities of raising the child.... [P]hysical care given to one parent does not affect the other parent's rights and responsibilities as a legal custodian of the child. Rights and responsibilities as legal custodian of the child include, but are not limited to, equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

---

2. The Nebraska legislature has since amended this statute to read: "When dissolution of a marriage or legal separation is decreed, the court may include a parenting plan developed under the Parenting Act, if a parenting plan has been so developed, and such orders in relation to any minor child and the child's maintenance as are justified ...[.]" Neb.Rev.Stat. 42-364.

3. SDCL § 25-4-47. *Restoration of former name to wife—Validation of prior decrees.* Whenever a decree of divorce is granted, the trial court may, in its discretion or upon the application of either party by the terms of the decree, restore to the woman her maiden name or the name she legally bore prior to her marriage to the husband in the divorce suit. All decrees of divorce previously entered restoring to the divorced woman her former name under this section are declared legal and valid and effective from their date of entry.

Iowa Code § 598.41. The Iowa Supreme Court interpreted this statute as granting broad discretion to the court in determining custody and the physical care of a child. *Gulsvig*, 498 N.W.2d at 728. The court further noted that the statute guarantees each custodian equal participation in decisions affecting the child's "legal status," and reasoned that an infant child's name is an incident of the child's legal status. *Id.* Based on these observations, the Iowa Supreme Court ruled that a trial court in a divorce case has subject matter jurisdiction to consider whether to change the name of the parties' child. *Id.*

Finally, the reasoning of the Illinois Supreme Court is persuasive:

> Because of the greater procedural safeguards attendant to a dissolution of marriage action and the breadth of the trial court's consideration of family relationships and economics we see no sound policy reason why power should not attach to consider a name change in this context.

*In re Marriage of Presson*, 102 Ill.2d 303, 80 Ill.Dec. 294, 465 N.E.2d 85 (1984) (citations omitted).

Admittedly, there is a specific chapter in our laws which sets forth the procedure for a formal name change. A circuit court has authority to change the name of a person upon compliance with the requirements of SDCL Ch. 21–37. However, there is nothing in that chapter which restricts a judicial name change to cases in which a separate petition has been filed under SDCL 21–37–2. There is nothing in this chapter stating it provides the exclusive remedy to change a person's name. Chapter 21–37 codifies the power of the court to effect a name change, and is supplementary to the authority specifically delineated under SDCL Ch. 25–4.

■ Having determined that the trial court possessed jurisdiction to entertain the name change request, the only remaining question is whether the trial court properly followed the statutory standard in resolving the dispute between the parents. When applying South Dakota's child custody statutes, the best interest of the child governs. SDCL 25–5–7.1; SDCL 30–27–19 (repealed S.L. 1993, ch. 213, § 170; reenacted in relevant part, S.L.1994, ch. 192, and codified at SDCL 25–4–45); *McKinnie v. McKinnie*, 472 N.W.2d 243 (S.D.1991) (citing *Nauman v. Nauman*, 445 N.W.2d 38, 39 (S.D.1989)). Consequently, the trial court should have applied this standard in resolving the name change dispute. *Accord, Cohee*, 317 N.W.2d at 384 (in determining child's surname in a divorce proceeding, the proper standard is the best interests of the child, the same standard used in all custody decisions involving minor children); *Gulsvig*, 498 N.W.2d at 729 (there is no presumption that a child bear the father's name or that the mother has a superior right to name the child because she has custody at birth; the real issue is what is in the best interest of the child); *In re Marriage of Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 922, 620 P.2d 579, 583 (1980) ("The sole consideration when parents contest a surname should be the child's best interest."); *Garling v. Spiering*, 203 Mich. App. 1, 3–4, 512 N.W.2d 12, 13 (1993) (parental disputes regarding a child's surname should be resolved in accordance with the best interests of the child).

■ Rather than applying the best interest of the child standard, the trial court ordered the child take the father's surname, relying on the tradition of conferring the father's name on a legitimate child and the authority of SDCL 34–25–13.3. The court erred in citing either of these reasons for its decision.

The parties mistakenly argue that the statute relied on by the trial court, SDCL 34–25–13.3, decides this dispute. At the time this case came to trial, this statute stated:

> If the mother was not married either at the time of conception or birth, the child's surname shall be shown on the birth certificate as the legal surname of the mother at the time of birth unless an affidavit of acknowledgement of paternity signed by both parents is received stating the surname of the child to be that of the father.

SDCL 34–25–13.3. Mother argues the statute emphasizes the mother's marital state *either* at the time of conception *or* birth. Since Mother was not married at the time of conception (though married at the time of

birth), she claims the statute requires her name appear on the birth certificate as the surname of the child.

Father counters that this interpretation would lead to bizarre results; it would require parents who married after their child's conception but before its birth to submit an affidavit of paternity before they could legally give the child the father's surname. Father also points to a subsequent amendment to SDCL 34–25–13.3 which suggests that the legislature did not envision or intend such results. The amended statute reads:

> If the mother was not married at the time of conception or birth, or at any time between conception and birth, the mother's surname shall be shown on the birth certificate as the legal surname of the child at the time of birth unless an affidavit of acknowledgment of paternity signed by both parents is received.

SDCL 34–25–13.3. By deleting the word "either" and adding the phrase "or at any time between conception and birth," father argues that the legislature clarified the meaning of the original statute. According to Father, under both the original and revised statute, the mother's surname must be assigned to the child if the mother is unmarried during the *entire* period from conception to birth. Since Mother was married to Father during part of this period, he contends SDCL 34–25–13.3 does not apply.

Although Father's arguments are persuasive, we need not actually decide the issue, because it is not dispositive of this case. The parties have argued this case, and the trial

court's decision relied upon, an analysis of SDCL 34–25–13.1 through 34–25–13.3 (1986).[4] However, such an analysis is misplaced. Even if SDCL 34–25–13.3 required that Mother bestow her surname on the child, this statute, located in the code chapter entitled "Vital Records and Burial Permits," only governed the initial designation of the child's name on the birth certificate. As noted above, once the care and custody of the child came into issue and the parties submitted themselves to the broad custody jurisdiction of the trial court, the court possessed the authority to review the propriety of changing the child's name in light of the best interest of the child. *See* SDCL 25–4–45; SDCL 25–5–7.1; *Gulsvig*, 498 N.W.2d at 728; *Cohee*, 317 N.W.2d at 384.

■ The trial court also erred by deferring to the custom of giving a child the father's surname. As discussed above, the court should have been guided by the best interest of the child. In determining the best interest of the child in a name change dispute, factors for the court to consider include, but are not limited to: (1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; and (5) whether the surname is different from that of the custodial parent. *Cohee*, 317 N.W.2d at 384. The court may also consider whether a particular name will contribute "to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship." *In re Marriage of Nguyen*,

4. At the time of the hearing in this case, these statutes read as follows:

> § 34–25–13.1. Husband's name entered on birth certificate—Father's name as determined in paternity proceeding. If the mother was married either at the time of conception or birth, the name of the husband shall be entered on the certificate as the father of the child unless paternity has otherwise been determined by a court of competent jurisdiction, in which case the name of the father as determined by the court shall be entered.
> § 34–25–13.2. Parents' consent or judicial determination required to name father in birth certificate when mother unmarried. If the mother was not married either at the time of conception or birth, the name of the father shall not be entered on the certificate of birth

without the written consent of the mother and the person to be named as the father unless a judicial determination has been made, in which case the name of the father as determined by the court shall be entered.
> *See supra* at p. 698, for text of SDCL 34–25–13.3 (1986).

Mother argues that SDCL 34–25–13.3 controls the child's name on the birth certificate because she was not married at the time of conception *and no affidavit of acknowledgement of paternity signed by both parents was received*. Although we do not reach this question in this case, we note that the wording of these statutes relied upon by Mother has been subsequently amended by the Legislature. 1993 S.D.Laws ch. 253, §§ 2, 3, 4.

684 P.2d 258, 260 (Colo.Ct.App.1983), cert. denied, 469 U.S. 1108 (1985). Finally, although the record in this case is unclear, it suggests that the mother unilaterally determined the child's surname on the birth certificate. "[T]he mother does not have the absolute right to name the child because of custody due to birth." *In re Quirk,* 504 N.W.2d 879, 882 (Iowa 1993) (Carter, J., concurring) (quoting *Gulsvig,* 498 N.W.2d at 729). As a result, the mother "should gain no advantage from her unilateral act in naming the child." *Id.* Likewise, the custom of giving a child the father's surname should not serve to give father an advantage. Only the child's best interest should be considered by the court on remand.

Father's request for attorney fees and costs is denied.

Affirmed in part, reversed in part, and remanded with instructions that the dispute over the child's name be resolved in accordance with the best interest of the child.

WUEST and AMUNDSON, JJ., concur.

HENDERSON, Retired Justice, who was a member of this Court at the time this action was submitted, concurs in part and dissents in part.

SABERS, J., dissents.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted did not participate.

HENDERSON, Retired Justice (concurring in part; dissenting in part).

For clarity and convenience of the reader, and to appreciate the viewpoint of this writer, the trial court's Findings of Fact 3 through 8 are set forth, in toto, herein. Conclusions of Law 3 through 5 entered by the trial court, thereafter follow.

### FINDINGS OF FACT

3. One child has been born as issue of this marriage, namely: Lindsey Margaret, born November 19, 1991.

4. The parties presented a Stipulation and Agreement for approval by the Court at the time set for trial herein, which Stipulation and Agreement the Court finds to be an appropriate disposition of the issues addressed therein.

5. In open court and orally, the *parties* further *stipulated* that *the plaintiff would continue to provide medical insurance for the benefit of the minor child,* that *the premium* for the same attributable to said child *would be divided 39% to defendant and 61% to plaintiff, and* that any *medical, dental,* or *optical expenses* incurred for the benefit of the child and not covered by such insurance *would be covered by the same percentages,* all in accordance with SDCL 25–7–6.16.

6. Only two issues remained for determination by the Court, namely (1) the last name to be used by the minor child of the parties and (2) whether defendant should be required to pay his child support through an assignment of his wages.

7. With respect to the name, *the Court notes* that *the mother, although unmarried at the time of conception, married the undisputed father of the child,* defendant, *prior to the birth of the child.*

8. The *Interim Order* of this Court *required support* to *be paid* on or before the 10th day of each month. *Defendant has been timely in his payments although always paying within the month due.* He receives his paycheck on alternate Thursdays and is unable to pay the support with the paycheck he receives earlier in the month because, with his low earnings, he would be unable to pay his rent.

### CONCLUSIONS OF LAW

3. The oral Stipulation of the parties with regard to *allocation of the cost of medical insurance for the child of the parties and medical, dental,* and *optical expenses for said child* not covered by such insurance *should be approved by this Court.*

4. Pursuant to SDCL 34–25–13.1 *the name of the defendant husband,* that

is, *"Gudahl", shall be the last name of the child and her legal name shall be Lindsey Margaret Gudahl. Further, the name of the father shall be inserted on the birth certificate of the child as her last name and her birth certificate shall be so corrected.*

5. Defendant shall not be required to execute a Wage Assignment provided that he make timely payment of the support due from the later of his checks each month, the same to be postmarked not later than the Friday following receipt of his paycheck and sent directly to plaintiff.

(Emphasis supplied mine.)

Knowing full well that Timothy A. Gudahl was the father of this child, Jennifer Keegan arbitrarily decided that the father's name not be mentioned. A name does not just identify you. It signifies a relationship—of family— roots. *See Carroll v. Johnson,* 263 Ark. 280, 565 S.W.2d 10, 14 (1978). Natural mother had no superior right to interrupt the inheritance of a surname. Such type of action "is not commensurate with genealogy, history, justice and fairness in the United States." *Montandon v. Montandon,* 242 Cal.App.2d 886, 52 Cal.Rptr. 43 (1966). A natural father has a protectible interest to have a child bear his surname. I refer to Kristine Cordier Karnezis, Annotation, *Rights and Remedies of Parents Inter Se with Respect to the Names of their Children,* 92 A.L.R.3d 1091, 1105 (1979).

If a natural mother is the custodial parent and retains her maiden name or takes the surname of another, she risks eroding the natural bond between father and child if she imposes her surname upon the child. Certainly, weakening or severance of that relationship does not serve the child's best interest. Nay, a child should know of his or her parentage—the name is a link to history. Moreover, it is reality! Recall, she and the father had been married for six months. She unilaterally decided that the child's birth would be illegitimate and unilaterally named the child Lindsey Margaret Keegan. Thereby, natural mother invaded both the child's rights and the natural father's rights. Natural mother attempted to defeat the law, not uphold it. Her action was legally obnoxious. Obviously, this was a social and legal detriment to both the father and the little girl. The best interest of the little girl was to have a legitimate birth. A father of an infant child has a natural right to have a child bear his name. *Application of Baldini,* 17 Misc.2d 195, 183 N.Y.S.2d 416 (1959). To overcome this, there must be compelling interests to singularly alter the child's surname. *Marshall v. Marshall,* 230 Miss. 719, 93 So.2d 822 (1987); *Overton v. Overton,* 207 Mont. 292, 674 P.2d 1089 (1983); *Cohan v. Cunningham,* 104 A.D.2d 716, 480 N.Y.S.2d 656 (1984).

This child was not born out of wedlock. *Consider Luedtke v. Koopsma,* 303 N.W.2d 112 (S.D.1981), which upholds the proposition that children who are born during wedlock are presumed to be the legitimate issue of marriage. Who is this lady who would turn around state law—state decisions—legitimacy—honor—a rightful birth—family relationships—family history? She wants the child's name to be her current name and that of another child by a different father. Thereby, she would have the family unit (ostensibly) have a more socially acceptable status and all names would be *conveniently* the same. She wants child support and medical expenses from daddy and has been receiving it, but she does not want the child to have daddy's name!

Natural mother expresses in her brief to this Court (in her Statement of Facts): "No information regarding the father was contained on the birth certificate at the time it was completed." Obviously, if she had done so, the child's surname would have been the same as the natural father: the mother's husband! In this day of law by acceleration and whirl, augured by the feminist movement in the field of domestic relations, why not make an inaccurate certificate! Excluding information about the known father served some kind of social/status gratification, to her way of thinking. However, by state law, the natural mother was required to attest to the accuracy of the birth. And the statute requires "accuracy!" This statute reflects "the personal data [must be] entered thereon." *See* SDCL 34-25-92.

Here is the bottom line: She broke the law by excluding information concerning the true father. Omitting the father's name from the birth certificate was legally obnoxious to the child's birthright and a denial of Gudahl's right to freely express that the child is actually his offspring. Divorce breeds hostility which undoubtedly plays a role in mother's rejection of the natural father's surname for the child. Hostility cannot change the true parentage of the little girl. Denial of parentage, based on emotion, is not in the best interest of the child, *Cohee v. Cohee*, 317 N.W.2d 381 (Neb.1982), and in my view is totally against public policy. The preservation and development of the father-child relationship should be a concern to the courts. *Daves v. Nastos*, 105 Wash.2d 24, 711 P.2d 314 (1985). Mother's hostility is ill-placed. As a general matter, giving the child the mother's maiden name to avoid embarrassment, inconvenience, or confusion is of little or no consideration. *In re Application of Seif*, 40 Misc.2d 596, 243 N.Y.S.2d 172 (1963); *Flowers v. Cain*, 218 Va. 234, 237 S.E.2d 111 (1977); *Likins v. Logsdon*, 793 S.W.2d 118 (Ky.1990); *Lassiter–Geers v. Reichenbach*, 303 Md. 88, 492 A.2d 303 (1985); Annotation, 92 A.L.R.3d at 1100. This latter case expounds the view that the surname of a child, born during marriage, is traditionally that of the father.

Here, the father gives unto his child *nourishment*. 1 Samuel 1:22. And desires to bestow *inheritance*. Luke 12:13–14. A child should give honor to parents. Exodus: 20:12. Permit it, under the law and this case, to be done. Proverbs 23:22 expresses: Hearken unto your father who begot you, and despise not your mother when she is old. Children are a heritage of the Lord. Psalm 127:3–5. As a trial judge, I was often told by counsellors that problem children come from the very homes where parents have relinquished their responsibilities of nourishment, training, and overall responsibility. It is obvious this father desires to fulfill a good role. Permit him to do so; permit him to share a heritage with his child. Thereby, this child will not be vulnerable to the strange types of philosophy which attack a firm foundation of right and wrong.

Although I concur with that aspect of the majority opinion which holds that Circuit Judge Srstka has the authority to denominate the father's surname as the child's surname, I dissent to return the case to the circuit court for a rehearing "on the best interests of the child." Judge Srstka had these parties before him; the facts of the case were likewise before him; the parties entered into a stipulation providing for child support (which was timely paid—he declared) and provided for medical, optical, and dental care (to which father was agreeable). The trial court considered all of these facts and the law, whereupon he dictated his rationale in the record, as reflected by the transcript. Proper Findings of Fact and Conclusions of Law were entered. There was sufficient evidence to sustain the findings. We should not disturb them upon appeal. *Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964). These findings support the conclusions of law and judgment. *Kirkeby v. Kenaas*, 85 S.D. 515, 186 N.W.2d 513 (1971).

Therefore, I would affirm the trial court in all respects, believing we should not march the troops up the hill—to thereafter march them down.

SABERS, Justice (dissenting).

I dissent because the procedural safeguards legislatively required by SDCL ch. 21–37 are being ignored.

The South Dakota Legislature has provided a statutory procedure for "Change of Name" in SDCL ch. 21–37. It is the only legislatively expressed procedure for change of name in these circumstances.

Despite that fact, the majority opinion holds that a trial court can change a child's name in a divorce action pursuant to its "best interest of the child" jurisdiction. I would hold that the trial court did not have the power to consider a name change in a divorce proceeding absent compliance with the procedures of SDCL ch. 21–37.*

* The circuit court erroneously assumed that it had authority to change Daughter's surname based on Father's verbal request. The circuit court

In this case, there was no document in the court file—i.e. no motion, petition, or the like—requesting the change of name. Without following necessary procedural require-ments, judicial review by this court will be hampered now and in the future.

The majority opinion's new rule may be abused in numerous ways in future cases. Parents could attempt to change a child's name every time a post-decree matter arises concerning visitation, custody or support. In effect, the opinion creates a second method of obtaining a name change. This method will be without the procedural safeguards estab-lished by SDCL ch. 21–37, notwithstanding the opinion's claim that there are *more* safe-guards in a divorce action.

Since a divorce court retains jurisdiction over support, custody and visitation, assum-ing no change in home state jurisdiction un-der the UCCJA, the trial court could effect a name change for a child living outside of the state, which raises extra-jurisdictional ques-tions. It also creates a mechanism to avoid the notice requirements of SDCL 21–37–4.

While some of these concerns may be aca-demic, this decision creates a potential for unanticipated circumvention of procedural re-quirements and provides a method to reach the merits of a name change without follow-ing those procedural requirements.

was without authority to enter an order or judg-ment changing the name of Daughter.

This action was commenced under SDCL ch. 25–4, relating to divorce. Under this chapter, the circuit court is given limited authority to change a name. The power is restricted to resto-ration of a former name to the wife, and does not grant the trial court the power to change the name of any other person, party or child of a marriage. SDCL 25–4–47. The only statutes in SDCL ch. 25–4 which even relate to a child's surname are contained in SDCL 25–4–48 and 25–4–49. These statutes relate only to the legi-timization of children after a divorce has been granted on the grounds of adultery. This divorce was granted on the grounds of irreconcilable differences and, as a result, these sections do not apply.

Under SDCL ch. 25–4, the circuit court has authority to dissolve marriages, legally separate parties, award alimony and separate mainte-nance, divide property, and to establish child custody and support. SDCL 25–4–17.2; SDCL 25–4–38 through 25–4–40; SDCL 25–4–44; SDCL 25–4–41; 25–4–45. It does not grant a circuit court authority to change the name of any person other than the wife, and does not create any right for parties to change the names of children in such an action.

A circuit court has the authority to change the name of a person, other than restoring a wife to her former name upon divorce under SDCL 25–4–47, *only* upon compliance with the provisions of SDCL ch. 21–37. "The circuit court shall have authority to change the names of persons, ... *as provided in this chapter.*" SDCL 21–37–1 (emphasis added). SDCL ch. 21–37 imposes a six-month residency requirement to the exercise of the court's jurisdiction, as well as the filing of a petition, publication of notice, and a separate hearing before a name may be changed. SDCL 21–37–2 through 21–37–5.

Nothing in the settled record indicates that Father complied with any of the requirements of SDCL ch. 21–37 in requesting that Daughter's name be changed. No petition was filed with the circuit court and, in fact, Father did not make any written request for a change of Daughter's surname in any of his pleadings, affidavits, or other formal submissions to the court. There is no proof in the record that notice of the request to change Daughter's surname was ever provided to Mother or was published as required by SDCL 21–37–4.

Father failed to comply with the requirements of SDCL ch. 21–37, which required the proper filing of a petition to invoke the circuit court's jurisdiction. As a result, the trial court was without authority to consider Father's request to change Daughter's name from Keegan to Gu-dahl.