171 P.3d 1148 (2007)
In the Matter of a Change of Name for A.C.S., A Minor Child.
No. S-12489.
Supreme Court of Alaska.
November 28, 2007.
*1149 G.R. Eschbacher, Justin Eschbacher, Anchorage, for Appellant.
Eric Gieser. Michelle V. Minor, Law Offices of Michelle V. Minor, P.C., Anchorage, for Appellee Lisa Starling.
Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

OPINION
MATTHEWS, Justice.
The question presented is whether the superior court properly denied a father's petition to change the surname of his preschoolage child to a hyphenated name containing both parents' surnames. We conclude that the court erred. We do so primarily because the court allocated to the father the burden of proving that the change was in the best interests of the child. Since this was an initial naming dispute, neither parent should have had a burden of proof.
I. FACTS AND PROCEEDINGS
The son of Eric Gieser and Lisa Starling was born on May 12, 2002. Gieser and Starling were not married. Before the birth of the child Gieser sued Starling in superior court in what became a child custody action.[1] The complaint alleged that Starling was pregnant with Gieser's child and had threatened to leave the state of Alaska to deprive Gieser of contact with the child and to deprive the state of Alaska of jurisdiction for purposes of determining custody, visitation, and child support. The complaint also alleged that Starling had "continually and excessively badgered [Gieser] with telephone calls and threats to deprive him of contact with the parties' minor child." The complaint sought a declaration that Alaska had jurisdiction, asked that Gieser's last name be added to the child's name, and requested that custody, visitation, and child support be ordered consistent with the best interests of the child. The complaint also requested a permanent injunction limiting the contact between the parties to "e-mail or fax except in the case of an actual emergency involving the minor child."
As anticipated in the complaint, Starling left the state of Alaska a few weeks before the birth of the child and gave birth in the state of Washington. Starling named the baby "Aidan Christian Kieran Starling." Some six weeks after the child was born Gieser filed an amended complaint in the custody action that sought primary physical and sole legal custody of the child and requested that the child's name be changed to a hyphenated surname that included the surname of both parents. The parties litigated custody and visitation through 2005 culminating in a modified custody order issued by Superior Court Judge Mark Rindner on December 5, 2005. Under the order Gieser has sole legal custody of the child, while he and Starling share physical custody on an equal basis. Gieser's request in the custody action that the child's name be changed to include his surname was denied on the ground that *1150 the request should be made in a separate proceeding.
In January 2006 Gieser filed a petition to change Aidan's name from "Aidan Christian Kieren Starling" to "Aidan Christian Gieser-Starling." Starling opposed the petition. The petition was also assigned to Judge Rindner. After a hearing, Judge Rindner denied the petition, finding that Gieser had the burden of proving that the proposed name change would be in the best interest of the child and that he failed to carry this burden. The court found in support of this conclusion that "the parties still have a high level of conflict regarding the child" and "that it would not serve the child's best interests to have a hyphenated last name" because "it is likely that the parties' conflict will continue and extend to which part of the hyphenated last name should be used if the Court were to grant the father's petition." Gieser appeals.
II. DISCUSSION
On appeal Gieser argues that the court erred in placing the burden on him to show that the change was in the best interest of the child, that the court relied on an impermissible factor when it found that the proposed name would be the source of continuing conflicts, that the court should have explicitly addressed the factors pertaining to a best interests determination regarding the change of a child's name referred to in Acevedo v. Burley,[2] and that the court erred in failing to fully explore the benefits of a hyphenated surname.[3]
Alaska Civil Rule 84(e) governs the procedures for changing the name of a minor child. The rule establishes that the standard to be satisfied for changing a child's name is the best interest of the child and implies that the burden of proving that the proposed change is in the best interest of the child is on the proponent of the change. The second paragraph of Civil Rule 84(e) provides:
If the court receives an objection to the proposed name change presented by a parent . . . prior to or at the time of the hearing on the proposed name change, the court shall consider the objection and shall only grant the name change if the court finds the name change to be in the best interest of the child.
Notwithstanding this implication, Gieser presents a number of authorities that hold that in cases where the initial naming of a child is in dispute neither party should have a burden of proof; the standard remains the best interests of the child, but neither party has a presumptive advantage.
One such case is Keegan v. Gudahl.[4] There the parents were married at the time of the birth of the child, though not at conception, and the mother instituted divorce proceedings only two months after the child was born.[5] At the birth of the child the mother gave the child her surname.[6] During the divorce proceedings the father contended that the child's name should be changed to his surname.[7] The trial judge agreed.[8] On appeal the Supreme Court of South Dakota reversed, holding that neither the mother's choice at the time of birth nor the tradition of children taking the surname of their father should be a source of advantage to either parent. Instead, the trial court should determine the child's surname based solely on best interest considerations:
"[T]he mother does not have the absolute right to name the child because of custody due to birth." As a result, the mother "should gain no advantage from her unilateral act in naming the child." Likewise, the custom of giving a child the father's surname should not serve to give father an advantage. Only the child's best interest *1151 should be considered by the court on remand.[9]
Similarly, in Schroeder v. Broadfoot, the Court of Special Appeals of Maryland ruled that neither parent should be at a disadvantage in an initial naming dispute.[10] The court also noted that this approach had been adopted by a majority of courts:
[T]he Court adopted a pure best interests standard for "no initial surname" cases, by which we mean the court decides the issue without either party bearing a burden of proof that would act as a legal tie-breaker, i.e., a presumption, in the event the court finds the evidence to be in equal balance. The majority of courts in other states also apply a pure best interests standard in disputes between parents over their children's initial names.[11]
In our view neither parent should automatically have a superior right to determine a child's surname.[12] It follows that in initial naming disputes the relevant question should solely be the best interests of the child, with no default position to fall back on in cases of doubt.[13]
In our view, this is an initial naming dispute. Even before Aidan was born the parties disagreed on what his surname should be. Gieser raised the surname issue in the custody action before the child was born, but the superior court ruled that this question would have to be taken up in a separate proceeding. When the custody litigation drew to a close, Gieser filed this change of name proceeding. There was thus no acquiescence in Starling's unilateral choice of the child's last name.[14] It follows that the court erred in imposing the burden of proof on Gieser.
It is clear that placement of the burden of proof on Gieser was an important part of the court's reasoning. The court stated in announcing its decision:
But I haven't heard any good reasons for  that it's in the child's best interest for  the child was born with the name of "Starling," and I haven't heard of any reasons why not keeping the name of "Starling" is not appropriate and why it's better for the child to have a hyphenated name. The suggestions have been made entirely  seem to relate that Mr. Gieser would like that to happen. And while I *1152 can sympathize with his desire to have his child have his name, just as I would sympathize with Ms. Starling's name, that's not the standard that I apply here. [A]nd so, given that the child has had the name "Starling" all his life, given that I do not believe the burden has been met, and given the conflict between the parents and the lack of communication, which both parents, I think, readily acknowledge, would, I think, only be exacerbated and put the child in the middle of a hyphenated name situation. That hyphenated name would be used to do that.

I do not find that the burden of proof has been [met] in this case and will deny the petition for the name change. (Emphasis added.)
A remand is therefore necessary for a best interest determination unweighted by burden of proof considerations.
Gieser also argues that the trial court impermissibly emphasized the fact that a hyphenated name would simply be a new cause for conflict between the parties. He argues that this finding simply rewards bad behavior and is not relevant in a change of name proceeding.
We agree that the possibility that the parties might have future disputes as to which part of a hyphenated name to use should not have had a central role in the court's decision making. Here, as in Acevedo v. Burley,[15] the court could have directed that the child's official surname be used in matters of record while leaving private or personal uses to the discretion of each parent or the child.[16]
Gieser also argues that the court erred in not referring to factors relevant to the change of a child's name that we quoted in Acevedo. In Acevedo we quoted language from the Supreme Court of Illinois in the case of In re Marriage of Presson,[17] where the court described the circumstances relevant to a change in a minor's surname:
To determine the best interest of the child, the court should consider the express wishes of the child and of both parents, the stated reasons for the proposed change, the child's age and maturity, the nature of the family situation, the strength of the tie between the child and each parent, any misconduct toward or neglect of the child by the parent opposing the change, and the name by which the child has customarily been called.[18]
We also noted the wishes of a young child need not be given weight since the child "is not necessarily an able judge of what his best interests are."[19]
Neither Acevedo nor In re Marriage of Presson was an initial naming dispute. Factors in initial naming disputes may be different in some respects. In particular, considering the "stated reasons for the proposed change" would be inappropriate since that assumes an established name. Further, "the name by which the child has customarily been called" would ordinarily have little weight since it is expected that initial naming disputes will involve only very young children. Otherwise, the Acevedo/Presson factors are relevant.
A more specific listing of factors in the context of an initial naming dispute was offered by the South Dakota court in Keegan v. Gudahl.[20] The court stated that factors
for the court to consider include, but are not limited to: (1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; and (5) whether the surname is different from that of the custodial parent. The court may also consider whether a particular name will contribute to the estrangement of the child from a *1153 non-custodial parent who wishes to foster and preserve the parental relationship.[[21]]
Although the first three factors perhaps overemphasize misconduct, we believe they are relevant and for the most part are fairly encompassed within those quoted in Acevedo. A commentator has offered a still more detailed listing of "child centered, gender neutral factors" for consideration in naming disputes:
1) the length of time that the child has used his or her current name; 2) the name by which the child has customarily been called; 3) whether a name change will cause insecurity or identity confusion; 4) the potential impact of the requested name change on the child's relationship with each parent; 5) the motivations of the parties in seeking a name change; 6) the identification of the child with a particular family unit, giving proper weight to step-parents, step-siblings and half-siblings who comprise that unit; 7) any embarrassment, discomfort, or inconvenience that may result if the child's surname differs from that of the custodial parent; and 8) the degree of community respect associated with the present and proposed surnames.[[22]]
With the possible exception of the last factor, we believe this listing is a sensible one. Insofar as any of the factors listed by the above authorities are found to be relevant, they should be referred to by the court in its decision on remand.
Finally, Gieser argues that the court too readily dismissed the possibility of employing a hyphenated name without fully considering its benefits. Gieser notes that a number of courts have recognized the benefits of using a hyphenated surname for a child whose parents live separately.[23] He contends that a hyphenated surname can foster a child's affiliation with both parents, impart to a child a greater sense of security, and serve to avoid confusion as the child participates in activities outside the home.
The Supreme Court of Ohio endorsed the use of hyphenated surnames in In re Willhite:
[The mother] is not attempting to give her daughter a new identity by eliminating the father's name. Rather, [the mother] is seeking to have both parents' surnames hyphenated and combined as the surname for the daughter the two parties share. [The mother] is not seeking to distance her ex-husband from their daughter. Instead, she is seeking to foster her daughter's affiliation with both parents, who have different surnames. See In re Change of Name of Andrews, 235 Neb. at 178, 454 N.W.2d at 493. "A dual name would help the child identify with both parents, a state of mind that child psychologists say is essential to the child's adjustment to divorce." Seng, supra, 70 VA. L.REV. at 1350, citing Cochran & Vitz, Child Protective Divorce Laws: A Response to the Effects of Paternal Separation on Children (1983), 17 Fam. L.Q. 327, 333-334, 353. Further, a combined surname gives the child a greater sense of security. Id.

Equally important, with the name addition, [the mother] seeks to avoid the confusion so prevalent with having a mother and child in the same household with two different surnames. The addition of the maternal surname may aid in avoiding confusion and embarrassment at school, at the doctor's office, at church, in sports or other social activities, and within the community. The child with a combined surname does not have to explain why his or her last name is different.
A combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that *1154 both parents have responsibility for that child. Seng, supra, 70 VA. L.REV. at 1348.[[24]]
Although we are not ruling that these considerations necessarily apply to the present case, we think that they are worthy of serious consideration.
III. CONCLUSION
For the above reasons, the decision of the superior court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
BRYNER, Justice, not participating.
NOTES
[1] Docket No. 3AN-02-04168 Civil, filed January 23, 2002. We take judicial notice of the pleadings filed in this case. See Drake v. Wickwire, 795 P.2d 195, 197 n. 1 (Alaska 1990) (holding that court may take judicial notice of pleadings filed in another case).
[2] 994 P.2d 389 (Alaska 1999).
[3] These are questions of law that we review non-deferentially applying our independent judgment and adopting the rule of law that is most persuasive in light of precedent, reason, and policy. See Burcina v. City of Ketchikan, 902 P.2d 817, 820 n. 4 (Alaska 1995).
[4] 525 N.W.2d 695 (S.D.1994).
[5] Id. at 695-96.
[6] Id. at 699.
[7] Id. at 696.
[8] Id.
[9] Id. at 700 (quoting In re Quirk, 504 N.W.2d 879, 882 (Iowa 1993)) (citations omitted).
[10] 142 Md.App. 569, 790 A.2d 773, 781 (2002).
[11] Id. at 783-84. In Schroeder the Maryland court considered an alternative approach taken by some other jurisdictions in which the name preferred by the custodial parent is presumptively regarded as in the child's best interests:

Some courts have adopted a mixed standard, however, that combines a best interests analysis with a presumption in favor of the name preferred by the custodial parent. The courts that have adopted such a standard premise it on the well-established principle that the child's custodial parent is presumed to act in his or her best interests in all respects, including in giving the child a name.
Id. at 784. The Maryland court rejected this approach, however, because it could have the effect of incorporating a maternal preference "because, maternity being established by nature, custody of an infant almost always is with his mother" and could also "lead to custody races to the courthouse and to parents refraining from agreeing upon custody, so as not to lose an advantage [in naming the child]." Id.
[12] Numerous jurisdictions take this view. In re Andrews, 235 Neb. 170, 454 N.W.2d 488, 491 (1990) (citing cases in which courts have held that neither parent has a superior right in naming a child).
[13] As noted, Civil Rule 84(e) implies that the burden of proof should lie with the proponent of the name change. We believe that this implication should only apply to proceedings seeking to change a child's name that both parents agreed to, not to initial naming disputes.
[14] One of the written findings signed by the court states as follows: "Mr. Gieser declined to sign the necessary paperwork in Washington at the time of the child's birth to be included on the birth certificate." While this finding is accurate, it cannot be read to imply that Gieser agreed with Starling's choice of a surname for the child. Gieser testified that when he visited Starling and the child just after the birth of the child, "I don't think I wanted to sign anything, as there was custody proceedings underway regarding my son." Given the extraordinary steps that Gieser took both just before and just after the birth of the child to ensure that his name be included as part of the child's surname, we believe that no inference of acquiescence can be inferred from his refusal to sign papers in the hospital room.
[15] 994 P.2d 389, 392 (Alaska 1999).
[16] See id. at 392.
[17] 102 Ill.2d 303, 80 Ill.Dec. 294, 465 N.E.2d 85 (1984).
[18] Acevedo, 994 P.2d at 391 (quoting In re Marriage of Presson, 80 Ill.Dec. 294, 465 N.E.2d at 88).
[19] Id. (quoting In re Marriage of Presson, 80 Ill.Dec. 294, 465 N.E.2d at 88).
[20] 525 N.W.2d 695 (S.D.1994).
[21] Id. at 699 (citations and quotations omitted).
[22] Lisa Kelly, Divining the Deep and Inscrutable: Toward a Gender-Neutral, Child-Centered Approach to Child Name Change Proceedings, 99 W. VA. L.REV. 1, 33 (1996).
[23] See, e.g., In re Marriage of Douglass, 205 Cal. App.3d 1046, 252 Cal.Rptr. 839, 844-45 (1988); In re Change of Name of Andrews, 235 Neb. 170, 454 N.W.2d 488, 493 (1990); Ronan v. Adely, 182 N.J. 103, 861 A.2d 822, 826-27 (2004); In re Willhite, 85 Ohio St.3d 28, 706 N.E.2d 778, 782 (1999); Knauer v. Keener, 143 Ohio App.3d 789, 758 N.E.2d 1234, 1237 (2001).
[24] 85 Ohio St.3d 28, 706 N.E.2d 778, 782-83 (1999).