#27190-a-GAS

**2015 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE NAME CHANGE OF
J.P.H, a minor child.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN L. BROWN
Judge

* * * *

STEVEN R. COTTON
Wipf & Cotton Law Offices, LLC
Wagner, South Dakota

Attorneys for petitioner and
appellant T.J.H.

SANDY J. STEFFEN
Gregory, South Dakota

Attorney for respondent and
appellee M.P.L.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 20, 2015

OPINION FILED **06/10/15**

#27190

SEVERSON, Justice

[¶1.] T.J.H. (Father) appeals the circuit court's decision to grant M.P.L.'s (Mother's) request to change J.P.H.'s (Son's) surname. Son's name was changed to a hyphenated surname, combining Mother's and Father's last names. We affirm.

*Facts and Procedural History*

[¶2.] Mother and Father were married at the time of Son's birth in 2009, and Son received the surname of his Father. Mother and Father divorced shortly after Son's birth. It was stipulated during the divorce that Mother would have primary physical custody of Son. Mother and Son moved from Madison, South Dakota, to her hometown of Gregory, South Dakota, after the divorce. Mother subsequently met M.L. (Stepfather). The two married in June 2012 and live in Burke, South Dakota.

[¶3.] In May 2014, Mother and Stepfather had a baby girl (Stepsister). During Mother's pregnancy, Son began to ask questions about Stepsister's name. When Son learned Stepsister's surname would be different than his surname, Son burst into tears because he wanted the same surname as Stepsister. During the remainder of Mother's pregnancy, Son had multiple conversations with Mother, Father, Stepfather, and grandparents about why his surname was different. Son expressed confusion over his family situation. He would normally call his Father "Daddy" and his Stepfather "Daddy M.," but after a conversation with Father, Son started using the designations "real" and "not real" to refer to Father and Stepfather, respectively. Son even asked Mother whether she was his "real" mother or if Father and his new fiancé were his "real parents." Mother, Stepfather, and

-1-

Son's maternal grandmother reassured Son that he had two daddies, two mommies, and two sets of grandparents and that each of those people loved him very much.

[¶4.]     Mother filed a petition for Son's name change in December 2013. The circuit court heard the matter in June 2014. Mother testified, "We want [Son] to feel as much a part of our family as [Father's] family. In my opinion, it's equal, you know, but we do have [Son] the majority of the time so we want him to be able to identify with our family." Stepfather testified that the hyphenated name change will help Son identify with both families and help alleviate confusion. Father opposed the name change because he felt like it would only add to Son's confusion and that the name change should be Son's decision when he is 18 years old. However, Father said he would continue to love Son regardless of a potential name change.

[¶5.]     Father has been an active parent since Son's birth. Father has always paid his child support obligation and has consistently utilized his visitation (every other weekend) with Son whenever it is possible to do so. Father, Mother, and Stepfather have an amicable relationship, and Father commented on how well Stepfather treats Son. Stepfather is also active in Son's life and takes Son to school, to football practice, and fishing.

[¶6.]     After testimony at the hearing from Mother, Stepfather, maternal grandmother, two other witnesses for Mother, and Father, the circuit court issued a memorandum opinion incorporating its findings on July 16, 2014. An order was filed on July 29, 2014. The court found that Son's name change was in his best interests. The court granted Mother's request to change Son's surname. Son's new

surname is a hyphenated form combining Father's surname and Mother's new surname (i.e., Stepfather's surname).∗  Father appeals.

[¶7.]    Father raises two issues:

1.    Whether the circuit court erred in granting Mother's request to change Son's surname.

2.    Whether the best interests of the child standard should be modified to include a finding of clear and compelling evidence by the circuit court.

*Standard of Review*

[¶8.]    In cases where we review a lower court's decision based on the best interest of the child, "'[circuit] courts possess broad discretion in deciding the best interests of a child; [its] decisions will only be disturbed upon a finding of abuse of discretion.'" *People ex rel. C.G.*, 2003 S.D. 78, ¶ 12, 667 N.W.2d 279, 282 (quoting *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 22, 591 N.W.2d 798, 807); *see also Block v. Bartelt*, 1998 S.D. 65, ¶¶ 10-12, 580 N.W.2d 152, 154.  "An abuse of discretion occurs when 'discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Miller v. Jacobsen*, 2006 S.D. 33, ¶ 18, 714 N.W.2d 69, 76 (quoting *Watson-Wojewski v. Wojewski*, 2000 S.D. 132, ¶ 14, 617 N.W.2d 666, 670).  Findings of fact are reviewed under the clearly erroneous standard.  *Id.* ¶ 19.

---

∗    When Mother divorced Father, she again took her maiden name.  Once Mother married Stepfather, she hyphenated her maiden name and his surname.  However, Mother now refers to herself and signs her name with Stepfather's surname.  Mother's petition sought to hyphenate Stepfather's surname, not Mother's maiden name, with Father's surname.

*Decision*

[¶9.]     1.   *Whether the circuit court erred in granting Mother's request to change Son's surname.*

[¶10.]    The best interests of the child govern a child's name change.  *Keegan v. Gudahl*, 525 N.W.2d 695, 698-99 (S.D. 1994).  In *Keegan*, we said:

> In determining the best interest of the child in a name change dispute, factors for the court to consider include, but are not limited to: (1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; and (5) whether the surname is different from that of the custodial parent.

*Id.* at 699 (quoting *Cohee v. Cohee*, 317 N.W.2d 381, 384 (Neb. 1982)).  "The court may also consider whether a particular name will contribute 'to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship.'"  *Id.* at 699 (quoting *In re Marriage of Nguyen*, 684 P.2d 258, 260 (Colo. Ct. App. 1983), cert. denied, 469 U.S. 1108 (1985)).

[¶11.]    In this case, the circuit court found that there was no misconduct by either parent; Father consistently paid child support; Father "exercised visitation to a reasonable extent under the circumstances that exist in regard to distance [and weather;]" and Son has had Father's surname since birth.  The court placed the most emphasis on the last factor.  The court stated, "It is significant to the child that the surname is different from that of the custodial parent and the family and community setting where he spends the majority of his time."  Son spends most of his time with Mother and Stepfather in Burke.  There was testimony about Son's confusion over his different surname, and also confusion in the Burke community.  For example, Mother testified that people in the community would occasionally

refer to Son as J.P.L. instead of J.P.H., but she would usually correct them. Additionally, Father presented evidence that the Burke newspaper, on at least one occasion, published a picture with the caption "[J.P.L. (not J.P.H.)], son of [Mother and Stepfather.]" Father testified that the article made him feel "alienated" and "non-significant."

[¶12.] The circuit court stated, "[It] is cognizant of the argument that a name change may contribute to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship." However, because of the amicable relationship between the parents and Father's love for Son regardless of a name change, the court granted Mother's request to change Son's surname. The court also reasoned that the hyphenated surname will give recognition to both sets of parents. As the Supreme Court of Ohio articulated, "A combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that both parents have responsibility for that child." *In re Willhite*, 706 N.E.2d 778, 782 (Ohio 1999).

[¶13.] Father argues the circuit court abused its discretion when it relied primarily on one factor and did not explore the other factors more in depth. We disagree. When employing factor tests, we generally do not require courts to analyze every factor in depth. *See Keegan*, 525 N.W.2d at 699 (saying "factors for the court to consider include, *but are not limited to . . .*" (emphasis added)); *Kreps v. Kreps*, 2010 S.D. 12, ¶ 26, 778 N.W.2d 835, 843 (regarding *Fuerstenberg* factors, "The trial court may, *but is not required to,* consider the following factors in

determining the best interests and welfare of the child. . . ." (emphasis added) (quoting *Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 41, 759 N.W.2d 734, 744)); *In the Interest of A.D.R.*, 499 N.W.2d 906, 909 (S.D. 1993) (regarding the transfer of a juvenile to adult court). The evidence and testimony presented at the hearing support the court's decision. The court had the opportunity to determine the credibility of witnesses and to weigh their testimony. It was not an abuse of discretion to place more weight on one factor when that factor was more applicable. Therefore, we affirm the circuit court's grant of Mother's request to change Son's surname.

[¶14.]      *2.*      *Whether the best interests of the child standard should be modified to include a finding of clear and compelling evidence by the circuit court.*

[¶15.]      "Father argue[s] . . . for the implementation of a best interest of the child standard that would require the [circuit] court to find that clear and compelling evidence exist[s] to establish that a change of name was in a child's best interest." Brief for Appellant at 12. Father points out that Minnesota uses that evidentiary standard. *See Robinson v. Hansel*, 223 N.W.2d 138, 140 (Minn. 1974). Father also states four reasons why the evidentiary standard should be modified: (1) the clear and compelling evidence standard would clarify the burden of proof; (2) it will reduce the risk of a custodial parent using a name change as a weapon against a non-custodial parent; (3) it recognizes the societal importance that surnames serve in establishing lineage; and (4) it will prevent the societal confusion that will arise from multiple name changes of a single child. The standards adopted in our current case law adequately address name-change issues. We do not find a need to alter our best-interest-of-the-child standard. Consequently, we affirm.

#27190

[¶16.]  GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.