1998 SD 65

**Gary David BLOCK, Plaintiff and Appellant,**

v.

**Mary Ellen BARTELT, a/k/a Mary Ellen Warns, Defendant and Appellee.**

No. 20323.

Supreme Court of South Dakota.

Considered on Briefs June 3, 1998.

Decided June 24, 1998.

Danny R. Smeins, Webster, for plaintiff and appellant.

Thomas J. Linngren of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, for defendant and appellee.

PER CURIAM.

[¶ 1.] Gary David Block (Father) appeals from an order and judgment dismissing, with prejudice, that portion of his complaint requesting that the name of his and Mary Ellen Warns' (Mother)[1] son be changed from Bradley Arthur Warns to Bradley Arthur Block. We affirm.

FACTS

[¶ 2.] Father is fifty-one years old. His family is native to Day County and his permanent address for the past seven years has been in Waubay. His primary business is beekeeping. Because this business is seasonal, pollinating contracts require him to take his bees to Arkansas, Texas, and California throughout the year. He has three children from a prior relationship. He and their mother agreed that they would bear the surname, Dean, which was her maiden name.

[¶ 3.] Mother is a thirty-four year old registered nurse. Except for a three month

1. Father captioned this case "Gary David Block, Plaintiff vs. Mary Ellen Bartelt a/k/a Mary Ellen Warns, Defendant." Mother crossed out the name Mary Ellen Bartelt on the admission of service. In documents in the settled record, Mother signs her name "Mary E. Warns."

period when she lived in Oklahoma, Mother has lived in Waubay. Although she is now married to her third husband, Randy Bartelt, she retained the surname Warns, obtained from her second husband. She does not know where Mr. Warns lives. In addition to the child involved in this case, Mother has three other sons. Brendan John Colby is seventeen; Mitchell Dean Warns is thirteen; and, Brian Allen Warns–Bartelt is two. Because of their rocky relationship, Mother and Father never married. Their son was born on May 27, 1993 and is now five years old. Paternity was never in dispute.

[¶ 4.] According to Mother, she and Father never discussed anything so she chose the family name, Bradley Arthur, and the surname she used, Warns, as Bradley's name. It was placed on the birth[2] and baptismal certificates. Originally, Father was not listed on the birth certificate. Mother contends that she asked him to do the necessary paperwork repeatedly. Father claims he was never asked. When Bradley was two, however, Father's attorney prepared a paternity affidavit listing Bradley's name as Bradley Arthur Warns and Father was listed on the amended certificate. At this point in 1995 Father became concerned that Bradley did not bear the surname, Block, and attempted to have Mother voluntarily change the name.

[¶ 5.] Father began this lawsuit in June 1997, seeking joint legal custody, visitation rights, and a change of surname from Warns to Block. Before the hearing, however, Mother and Father stipulated that Mother would continue to be entitled to the care, custody, and control of Bradley and agreed to a visitation schedule. They did not agree about the issue concerning Bradley's name and each testified at the hearing.

[¶ 6.] According to Mother, Father visited Bradley on the day of his birth and attended his baptism. He paid the medical expenses and began supporting Bradley financially when Bradley was sixteen months old. During the first two years of Bradley's life, Father and Bradley's contact was infrequent because of Father's absence from Waubay due to his business. Since then, the contact has been closer and Bradley enjoys being with Father.

[¶ 7.] Mother also testified that Bradley knows his name, refers to himself as Bradley Arthur Warns, and has never used the name Bradley Block, although he knows that his father's last name is Block. He is aware that he shares the name Warns with his Mother and brothers. The name Warns is significant, she feels, because she has worked hard under it and shares it with her children.

[¶ 8.] Father admitted that his contact with Bradley was limited by his business during the first two years of Bradley's life. Since then, they have developed an excellent relationship and enjoy fishing, catching frogs and mowing. Bradley's name is important to Father. He assumed that Bradley would have his surname since that is "normal," and the Block, as well as the Warns name, is well thought of in the community. While his relationship with Bradley would not change if Bradley's name were changed, Father believes it would make a difference to Father's extended family, some of whom live in Day County, but most of whom live in Minneapolis. He admitted that if Bradley's name were changed, Bradley would have no siblings sharing the same name.

[¶ 9.] The trial court had this Court's decision in *Keegan v. Gudahl*, 525 N.W.2d 695 (S.D.1994) before it during the name change hearing. It ruled from the bench, saying:

> THE COURT: There's no easy answer to these things. I think the case really said in the best interest of the child. The child's name has been Warns for four years and he has lived with the mother four years basically and the bulk of the time will be with the mother apparently and the mother, even though she's using not her married name, has been using the name Warns and will continue to use the name Warns. I think under the circumstances it's in the best interest of the child that he keep that name. We're in recess.

---

**2.** SDCL 34–25–13.3 provides, "If the mother was not married at the time of conception or birth, or at any time between conception and birth, the mother's surname shall be shown on the birth certificate as the legal surname of the child at the time of birth unless an affidavit of acknowledgement of paternity signed by both parents is received."

The trial court also entered written findings of fact.

## ISSUE

**[¶ 10.] Did the trial court abuse its discretion by failing to change Bradley's surname from Warns to Block?**

## DISCUSSION

[¶ 11.] The surname that a child bears is often a bitterly contested issue and the determination of the best interest of the child is fact specific. Jay M. Zitter, Annotation, *Rights and Remedies of Parents Inter Se with Respect to the Names of Their Children,* 40 A.L.R.5th 697 (1996). In divorce proceedings, SDCL 25–4–45, and in custody disputes between parents, SDCL 25–5–7.1, a trial court has the jurisdiction and legitimate authority to resolve disputes between parents regarding the proper name of a child. *Keegan,* 525 N.W.2d at 696–697. In doing so, the trial court is guided by the best interest of the child. *Keegan,* 525 N.W.2d at 699.

[I]n determining the best interest of the child in a name change dispute, factors for the court to consider include, but are not limited to: (1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; and (5) whether the surname is different from that of the custodial parent. *Cohee [v. Cohee,* 210 Neb. 855] 317 N.W.2d [381] at 384 [ (1982) ]. The court may also consider whether a particular name will contribute "to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship." *In re Marriage of Nguyen,* 684 P.2d 258, 260 (Colo. Ct.App.1983), cert. denied, 469 U.S. 1108, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985). Finally, although the record in this case is unclear, it suggests that the mother unilaterally determined the child's surname on the birth certificate. "[T]he mother does not have the absolute right to name the child because of custody due to birth." *In re Quirk,* 504 N.W.2d 879, 882 (Iowa 1993) (Carter, J., concurring) (quoting [*In re Marriage of]* Gulsvig, 498 N.W.2d [725] at 729 [ (Iowa 1993) ]). As a result, the moth-

er "should gain no advantage from her unilateral act in naming the child." *Id.* Likewise, the custom of giving a child the father's surname should not serve to give father an advantage.

*Keegan,* 525 N.W.2d at 699–700.

[¶ 12.] Father contends that the trial court abused its discretion by allowing Bradley to retain the surname Warns. He contends that by doing so the court discounted the factors enumerated in *Keegan* and relied on a presumption in favor of the name given at birth. Our review of the record convinces us that the best interests of Bradley were carefully considered and the trial court did not abuse its discretion.

[¶ 13.] While Mother initially chose Bradley's name, Father was present at the birth and baptism and made no effort to influence or negotiate selection of Bradley's name. Instead, he waited until Bradley was four years old, knew his name, and identified with it before beginning proceedings seeking to change the name. It is undisputed that Father has paid Bradley's birth medical expenses, supported him since he was sixteen months old, provided insurance for him, and had increasing contact with him. It is also undisputed, however, that Father's business takes him out-of-state for extended periods of time and he agreed to allow Mother to continue to be entitled to Bradley's custody and care. Bradley will remain an integral part of a family unit residing in a home he has always lived in and sharing the same surname with his mother and two of three brothers. While Father makes the point that the name Warns came from Mother's second husband that Bradley has no relationship with, the name Warns is also the name that Mother has used for at least fourteen years (the majority of her adult life), built her profession under, and used as the surname for three sons. Finally, Father admitted that his relationship with Bradley is not affected by Bradley's name and the Block name is not shared by Father's other children. Under these circumstances the trial court did not err in determining that Bradley's best interests are served by retaining the name Warns.

[¶ 14.] Mother has filed a motion for $940.96 in appellate attorney fees. Ap-

pellate attorney fees may be granted "in actions where such fees are allowable[.]" SDCL 15–26A–87.3. Generally, the compensation of attorneys is left to the express or implied agreement of the parties. SDCL 15–17–38. However, "[t]he court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, separate maintenance, support or alimony." SDCL 15–17–38. This case does not fall within these categories and the motion for attorney fees is denied.

[¶ 15.] The judgment is affirmed.

[¶ 16.] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.