2005 SD 7
DEREK S. BLASE, Plaintiff and Appellant,
v.
HEIDI M. BREWER, Defendant and Appellee.
No. 23046
Supreme Court of South Dakota.
Considered on Briefs on August 23, 2004
Opinion Filed January 12, 2005
ELLIE M. VANDENBERG, Volga, South Dakota, Attorney for plaintiff and appellant.
TODD D. BOYD of Gunderson, Evenson, Boyd, Knight & Stoltenburg, Clear Lake, South Dakota, Attorneys for defendant and appellee.
KONENKAMP, Justice
[¶ 1.] In this paternity action, the mother and father mediated custody and visitation, and the circuit court approved their agreement. Before the case was completed, however, the mother rescinded her agreement and the matter proceeded to trial. The father now contends that the mediated agreement binds the parties and cannot be disturbed without a showing of a significant change in circumstances. Although a court-approved mediated agreement is binding on the parties, if, after a hearing, the court finds that the best interests of the child require another custody arrangement, then the agreement will not preclude the court from entering an order on child custody at variance with what the parties previously agreed. We affirm the custody order and remand for further findings on the question of the child's surname.

Background
[¶ 2.] Derek S. Blase and Heidi M. Brewer had a relationship that resulted in the birth of a child on August 24, 2002. On the same day, Blase arranged for a paternity test. The test result confirmed he was the father.
[¶ 3.] Blase saw the child frequently, and Brewer allowed him to take the baby with him for visits. In early January 2003, Blase and Brewer, along with their parents, met to discuss changing the child's surname. The discussion led Blase to seek legal counsel and Brewer to file an application for child support enforcement. In circuit court, Blase was found to be the biological father and was ordered to pay $100 per month child support. The mother was awarded custody.
[¶ 4.] On the question of visitation, the court required the parties to attend mediation. The parties reached a mediated agreement. However, they could not mediate certain other issues, including the child's surname. The court approved the agreement by order on June 9, 2003.
[¶ 5.] Before a hearing on the remaining issues, Brewer informed the court that she was not satisfied with certain terms in the mediated agreement. Consequently, the court conducted a trial on all the issues and reached a decision inconsistent with the mediated custody agreement. The resulting order, dated October 10, 2003, superseded all earlier orders. The trial court further found that the child's surname should remain Brewer.
[¶ 6.] Blase raises three issues on appeal. (1) Did the circuit court erroneously vacate or modify a mediation order entered under SDCL 25-4-61? (2) Did the court erroneously refuse to change the minor child's last name to either that of the father's, or to a hyphenated last name that included both the father's and the mother's last names? (3) Did the court erroneously and punitively place all the burden and expense of transportation for visits on the father?

Analysis and Decision
[¶ 7.] Issues of statutory construction are reviewed de novo. Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶16, 591 NW2d 798, 804. Our goal in reviewing a statute is to discover the intent of the law. State v. Krahwinkel, 2002 SD 160, ¶13, 656 NW2d 451, 458 (citing State v. Barton, 2001 SD 52, ¶8, 625 NW2d 275, 278). The plain language of statutes normally reveals the legislative intent. Id. (citing Faircloth v. Raven Indus., Inc., 2000 SD 158, ¶6, 620 NW2d 198, 201).
[¶ 8.] Blase first argues that we should interpret SDCL 25-4-61 as binding the parties and the court. He believes the order approving the mediated agreement should be viewed with the finality of a litigated proceeding. He contends that lacking evidence of a change in circumstances, the intent of the statute is served by holding the parties and the court to the approved agreement. Otherwise, Blase asks, "Why would any party agree to go to mediation and pay the costs thereof when the results could be thrown out a few months later, and have no binding effect whatsoever in Court?"
[¶ 9.] SDCL 25-4-61 provides:
The mediator shall reduce to writing any agreement of the parties. The mediator shall inform the parties of their right to review the agreement with counsel before they sign the agreement. After the agreement is signed by the parties, the mediator shall present the agreement to the court. The agreement is not binding upon the parties until approved by order of the court.
Blase contends that where mediation is "successful" it must be binding. To support his argument, Blase points to the last sentence of SDCL 25-4-61 that states, "The agreement is not binding upon the parties until approved by order of the court." It cannot be denied that once a mediated agreement is approved by the court, the parties to the agreement are bound by its provisions. But the statute does not address to what extent or duration the parties are bound. Therefore, we must look beyond this single sentence to answer whether the Legislature intended to bind the parties and the court to the approved agreement until a change of circumstances is presented.
[¶ 10.] As authority supporting his argument that public policy requires us to hold mediated agreements sacrosanct, Blase cites Roger M. Baron, Child Custody Determinations in South Dakota: How South Dakota Courts Decide Child Custody Cases, 40 SD L REV 411 (1995). In that article, Professor Baron notes that "[p]ublic policy supports settlement and compromise on issues surrounding divorce cases[.]" Id. at n21. Fine  but we also agree with Professor Baron when he wrote:
Most divorce cases and custody determinations are settled by agreement. An important question is whether the court is bound by the parties' agreements regarding custody. The answer uniformly given by all courts is "no." In South Dakota, an agreement by the parties is simply "one relevant factor for the court's consideration," and the agreement "does not control the court's exercise of its discretion." Among other things, the court has a duty to ensure that the agreement is in the best interests of the child.
In most cases, agreements by the parties are approved and adopted by the courts. However, parties may occasionally reach agreements which are not necessarily in the best interests of the child. If this occurs, the court must reject the agreement because it is in conflict with the child's best interests.
Id. at 426-27. We have often confirmed that children's best interests take "chief importance and will prevail over any mere preponderance of a legal right." Pribbenow v. Van Sambeek, 418 NW2d 626, 628 (SD 1988) (citation omitted). Here the court approved the agreement, but still owed a duty to ensure that the agreement was in the best interest of the child before issuing a final judgment.
[¶ 11.] Blase argues that the trial court made no fact finding to justify modifying the temporary order. Instead, Blase contends, the trial court "simply made conclusory statements in its findings of fact that the modification being ordered was in the best interest of the child." Blase points to Finding of Fact 8:
The State of South Dakota has adopted visitation guidelines which are based upon the premise that infants under the age of five have a great need for continuous contact with the primary caretaker who provides a sense of security, nurturing and predictability, and accordingly, it is not in the infant's best interests that the infant be with the non-custodial parent too much.
Regardless of whether this is a conclusion of law or a finding of fact, it was an adequate explanation for the court's ruling. Cf. Jasper v. Jasper, 351 NW2d 114, 117 (SD 1984). The child was "under the age of five" at the time the final order was issued, and therefore, the child had "a great need for continuous contact with the primary caretaker who provides a sense of security, nurturing and predictability." These findings support the court's conclusion that "it [was] not in the infant's best interests that the infant be with the non-custodial parent too much."
[¶ 12.] Blase asserts that any change in custody could only be justified by a substantial change in circumstances. We have previously held that there is no need to prove a substantial change in circumstances in cases that have not been contested earlier. McKinnie v. McKinnie, 472 NW2d 243, 244 (SD 1991); see also Jeschke v. Wockenfuss, 534 NW2d 602, 605 (SD 1995). Approval by court order of a mediated agreement does not amount to a litigated judgment. A mediation agreement is similar to a stipulation incorporated into a divorce decree. Thus, a later hearing to change or modify custody in these situations does not require a change in circumstances because the issues have never been litigated.
[¶ 13.] Blase next questions the trial court's refusal to change the child's surname. We agree with his assertion that the court did not sufficiently state a finding upon which his conclusion could be properly based. In Block v. Bartelt, this Court noted a nonexclusive list of factors upon which a trial court might rely to determine a child's proper surname. 1998 SD 65, ¶11, 580 NW2d 152, 154. Those factors included: "(1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; . . . (5) whether the surname is different from that of the custodial parent"; and (6) "whether a particular name will contribute `to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship.'" Id. (citations omitted). We also noted two factors that should afford no advantage to the parties: (1) a mother's unilateral act of naming a child at birth, and (2) the custom of giving a child the father's surname. Id.
[¶ 14.] In Finding of Fact 13, the court found:
The child's surname, Brewer, has been the child's surname since his birth on the 24th day of August, 2002, and the surname is the same as the child's mother who is the primary caretaker, and there appears to be no good cause for changing the child's surname, and therefore, it is in the best interests of the child that his surname remain the same, Brewer.
The court's decision places improper emphasis on the mother's unilateral act of naming the child at birth. The finding is couched in terms that seem to be in accord with the length of time a surname has been used. However, Blase has contested the child's surname for virtually that entire time. Thus, by considering the length of time the surname had been used, the trial court was, in effect, giving Brewer the very advantage that this Court has determined to be improper. Thus, the ultimate question should not be whether "there appears to be no good cause for changing the child's surname," but whether the child's best interests favor such a change. Brewer argues that Blase's failure to list his name on the birth certificate at the child's birth amounted to an acquiescence of the surname Brewer. We do not believe it would be fair to use this rationale. A putative father is at a disadvantage when he wishes to obtain a paternity test before accepting the duties and privileges of fatherhood. If he admits paternity before testing and the tests later prove he is not the father, he loses the opportunity to challenge paternity, which the law allows him. Thus, we conclude the trial court erred in not considering the proper factors.
[¶ 15.] Blase's third issue lacks sufficient merit for discussion. Lastly, Brewer submitted an itemized statement for attorney fees, and based on our well-settled factors in deciding claims for such fees, we award her $1000 in appellate attorney fees.
[¶ 16.] Affirmed in part and remanded in part.
[¶ 17.] ZINTER, and MEIERHENRY, Justices, concur.
[¶ 18.] SABERS, Justice, dissents.
[¶ 19.] GILBERTSON, Chief Justice, concurs in part and dissents in part.
SABERS, Justice (dissenting).
[¶ 20.] I would affirm the trial court on all three issues, not just the first and third issues.
[¶ 21.] The trial court considered the matter of the child's surname and determined that there was "no good cause for changing the child's surname and . . . [that] it is in the best interests of the child that his surname remain the same, Brewer." (emphasis added).
[¶ 22.] There is no showing that Blase paid any of the medical expenses in connection with the birth of the child. In addition, there is no showing that Blase paid any support for the period from the birth of the child in August 2002 until he was ordered to do so in February 2003. Since then, Blase has been ordered to pay a mere $100 per month child support, when the cost to support the child may be five to ten times that much. Obviously, the mother is not only the primary caretaker of the child but also the primary supporter and the trial court had sufficient reason to leave the child's surname as Brewer.
GILBERTSON, Chief Justice (concurring in part and dissenting in part).
[¶ 23.] Like Justice Sabers, I would affirm the trial court on all three issues.
[¶ 24.] As far as the child's surname, Block v. Bartelt, 1998 SD 65, ¶11, 580 NW2d 152, 154, sets up "a nonexclusive list of factors upon which a trial court might rely to determine a child's proper surname." This not being a mandatory checklist, Justice Sabers is correct that the trial court's conclusion that there appears to be no good cause for changing the child's surname is sufficient.
[¶ 25.] I also disagree that the trial court placed undue emphasis on the unilateral act of mother naming the child at birth. To begin with, the length of time the surname has been used is one of the Block v. Bartelt factors. The trial court did not simply say mother named the child at birth, instead it said the child has carried mother's surname since birth (1) because she is the primary caretaker and (2) there is no good cause to change the name.