#24093-r-RWS

**2007 SD 83**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE CHANGE OF
NAME OF L.M.G.,
A Minor Child.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STUART L. TIEDE
Judge

* * * *

DEBRA M. VOIGT
Voigt Law Office, PC
Sioux Falls, South Dakota                Attorney for appellant
                                         Mother.


MARY ANN GIEBINK
Galland Law Firm, PC
Sioux Falls, South Dakota                Attorney for appellee
                                         Father.

* * * *

                                         CONSIDERED ON BRIEFS
                                         ON JANUARY 8, 2007
                                         REASSIGNED MARCH 13, 2007

                                         OPINION FILED **08/08/07**

#24093

SABERS, Justice (on reassignment).

[¶1.]     We determine whether a trial court abused its discretion in ordering the name change of L.M.G. from W.G.'s (Mother) married name to R.P.'s (Father) surname.  L.M.G. was conceived during an affair between Mother and Father.  Mother was married at the time and eventually reconciled with her husband.  Mother listed her husband's surname on daughter's birth certificate.  Father subsequently petitioned to change daughter's surname to his own.  After the trial court ordered L.M.G.'s surname name to be changed to Father's surname, Mother appealed.  We reverse.

## FACTS

[¶2.]     In 2003, L.M.G. was conceived during an affair between her mother of Sioux Falls, South Dakota and her father of Worthington, Minnesota, after Father responded to Mother's personal ad on an internet site.  Although Mother's internet profile indicated that she was "single," she was actually married to C.G. (Husband) but the couple had no children at the time.[1]  Father and Mother had a relationship for approximately seven months with Mother staying overnight at Father's house three or four nights per week.

[¶3.]     Father testified at trial that he did not discover that Mother was married until shortly after the child was conceived.  Although Mother told Father she had been in a bad marriage for five years and wanted out, she felt her religious

---

1.     Mother and Husband now have a child together.  She is within two years of L.M.G.

-1-

beliefs would not allow her to leave her husband. In January of 2004, Mother informed Father that she had decided to reconcile with Husband.

[¶4.] L.M.G. was born on March 12, 2004. Mother put her husband's surname, which is her own surname, on the child's birth certificate. Subsequently, both Father and Husband agreed to paternity testing, which verified that Father was the biological father of the child. Father then sought visitation, which was granted. Initially, Father was allowed to visit L.M.G. for two hours three times a week with a three-hour visit on Sundays. When the child was six months old, Father's visitation increased to three hours three times a week and four hours on Sunday. Father would drive to Sioux Falls, South Dakota from Worthington, Minnesota on the weekdays for visitation and Mother would meet him halfway on Sundays.

[¶5.] In August 2005, Father filed a petition to change his daughter's surname to his, which Mother challenged. During this time, Mother and Husband had a child together.[2] At the January 2006 hearing, the only evidence regarding which name was in the best interest of the child came from the testimony of Father and Mother. No one else testified. Based on their testimony, the trial court

---

2.  Mother testified at the hearing:

    [L.M.G.] now has a younger sister. We just had a child two months ago and they are within two years of each other, which means they will be close together in school. They'll be involved in activities together and I feel it would alienate [L.M.G.] to have a different last name than her younger sibling, as well as any future siblings she may have, as well as a different last name than myself and her stepfather when she lives within a cohesive family.

concluded that it was in the best interest of the child to change her surname to that of her biological father. The trial court also awarded Father joint legal custody. Mother appeals and raises the following issue:

Whether the trial court erred in changing the name of L.M.G.

## STANDARD OF REVIEW

[¶6.]     In cases where we review a lower court's decision based on the best interest of the child, the "[t]rial court[ ] possess[es] broad discretion in deciding the best interests of a child; [its] decision will only be disturbed upon a finding of abuse of discretion." People *ex rel*. C.G., 2003 SD 78, ¶12, 667 NW2d 279, 282. "An abuse of discretion occurs when 'discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76 (additional citations omitted).

[¶7.]     The issue of what surname a child should use is guided by a determination of what is in the best interest of the child. Block v. Bartelt, 1998 SD 65, ¶11, 580 NW2d 152, 154. In a name change, what is in the best interest of the child involves several factors. *Id*.; *see also* Blase v. Brewer, 2005 SD 7, ¶13, 692 NW2d 785, 788. These factors include, but are not limited to:

> (1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; (5) whether the surname is different from that of the custodial parent. Cohee [v Cohee, 210 Neb 855] 317 NW2d [381] at 384 [(1982)]. The court may also consider whether a particular name will contribute "to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship." *In re* Marriage of Nguyen, 684 P2d 258, 260 (ColoCtApp 1983), *cert. denied*, 469 US 1108, 105 SCt 785, 83 LEd2d 779 (1985).

*Block*, 1998 SD 65, ¶11, 580 NW2d at 154.[3] A mother gets no advantage from the unilateral act of naming a child at birth, nor does the father obtain an advantage from the custom of giving a child the father's surname. *Id.*

[¶8.]     The trial court made the following findings of facts:

1.  That the court has determined that the Petitioner and Respondent committed adultery, which resulted in the birth of the child pertaining to this matter.

2.  That the court has determined that the Petitioner has supported the child since shortly after her birth.

3.  That the Petitioner sought to establish his rights as a father and to obtain contact and maintain contact with the child shortly after her birth.

4.  The child is approximately 20 months old and has had the same surname since her birth.

5.  At this point, the child has the same surname as the Respondent/custodial parent, but this surname is also the surname of the stepfather, and not the surname of the biological father of the child.

6.  That the Petitioner has shown to the court that he wishes to foster and preserve the parental relationship and that permitting the child to retain the surname of the stepfather will contribute to the estrangement of the child from Petitioner.

---

3.     We adopted these factors from the Nebraska case of *Cohee*. 317 NW2d at 384. The Nebraska Appellate Court has since noted additional factors to consider. They are: "(6) a child's reasonable preference for one of the surnames; . . . (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit." Minnig v. Nelson, 613 NW2d 24, 27 (NebCtApp 2000). The court further recognized as an important factor "the possibility that a different surname may cause insecurity or a lack of identity . . . ." *Id.*

[¶9.] Mother argues that the judge abused his discretion because most of the findings of fact are neutral and the findings that favor Father are clearly erroneous. She specifically disputes the finding that using her husband's last name would contribute to the estrangement of the child from the child's father. We agree that the decision to change L.M.G.'s name is an abuse of discretion because the trial court failed to view this situation from the standpoint of the child's best interest.

[¶10.] In this case, it is in the child's best interest to keep the surname she has had for two years because it is the name of "her family unit." It is her Mother's name, her half-sister's name, her stepfather's name and her name.

[¶11.] It makes no sense to change her name after two years to her natural Father's name. From the standpoint of her best interest, her name should remain the same as her family unit because she socializes with them, will go to school with them and live with them the majority of the time. Why should she be unnecessarily required to explain why her surname is different from her family unit in all these circumstances?

[¶12.] In contrast, when she is with her natural father, there would be very few instances where the question would even come up to require an explanation. Therefore, when viewed from the child's standpoint, the trial court abused its discretion in changing her name.

[¶13.] Although the trial court considered the appropriate factors, it abused its discretion for the following reasons. First, the trial court placed undue importance on the supposed instability of Mother and Husband's marital relationship. Second, it disregarded the parties' testimony that the relationship

between all the parties was improving and emphasized the prior bad aspects of the parties' relationship with one another. Third, as indicated, the trial court failed to consider the potential embarrassment L.M.G. may suffer by having a different surname than her immediate family unit.

[¶14.]        The trial court made several findings of facts in relation to the factors. The trial court found there was a historically troubled relationship between Mother and Husband. It voiced concerns that Mother and Husband could divorce and then L.M.G. would be left with a surname that was not Mother's. However, this is a speculative finding and actually could be used in any case where Mother wants to use her Husband's name. There is always the possibility of divorce. We could just as easily speculate that in the event of a divorce, Mother could keep Husband's surname and L.M.G. would still have the same name as her Mother. *See Block*, 1998 SD 65, ¶13, 580 NW2d at 154 (affirming the circuit court's dismissal of father's name change petition where the child's surname came from the Mother's second ex-husband because she used that name for business and the name is shared with her other sons).

[¶15.]        The trial court placed undue influence on the fact that L.M.G.'s current surname is that of her stepfather. This name is also Mother's chosen name. The fact that it could change is speculation and highly irrelevant in the inquiry of the child's best interest. Emphasis on the fact it is stepfather's surname is improper concern for Father's interest in replacing stepfather's name with his own name, and is not in the child's best interest.

[¶16.]     Furthermore, the trial court noted that Husband and Mother had initially resisted Father's attempts at asserting his parental rights. However, there was no testimony that the current state of the parties' relationship was hostile. Indeed, the opposite testimony was given. Father was getting increasing visitation and the parties had settled that increase on their own. Father testified the parties "are improving our relationship all the time." He also testified that a name change would not change his and L.M.G.'s relationship and that they have a great relationship right now. Mother testified the situation was hard at first, but things have improved. The trial court's worry about unstable relationship and continued estrangement between the parties does not conform to the current state of the evidence.

[¶17.]     Finally, the trial court failed to consider "the difficulties, harassment, or embarrassment the child may experience from the proposed surname" and the fact L.M.G. will have a different name and be alienated in her family unit. *See Minnig*, 613 NW2d at 27 (noting the trial court should consider the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname). L.M.G resides principally with her Mother and she currently has the same name as her half-sister, Mother and stepfather with whom she lives the majority of the time. Her half-sister is close to her age and will be attending school about the same time as L.M.G. It would be in the best interest of L.M.G. to have the same name as her half-sister and the family she lives with most of the time. She would not have to explain why her name is different than her half-

sister if she keeps her current surname. As indicated, while she is with Father, it is unlikely a different name would even be noticed.

[¶18.] For these reasons, the trial court abused its discretion in ordering L.M.G.'s name to be changed. We reverse.

[¶19.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶20.] ZINTER and MEIERHENRY, Justices, dissent.


MEIERHENRY, Justice (dissenting).

[¶21.] I dissent. The question before this Court is whether the trial court abused its discretion. It is well established that in cases where we review a lower court's decision based on the best interests of the child, "[the] trial court[ ] possess[es] broad discretion in deciding the best interests of a child." People *ex rel*. C.G., 2003 SD 78, ¶12, 667 NW2d 279, 282. We may only overturn the trial judge's decision when the record reflects an abuse of discretion, "not merely [a decision] which might have been made differently if done [ ] as the initial fact finder." Iversen v. Wall Bd. of Education, 522 NW2d 188, 193 (SD 1994). Here the trial court, considering the appropriate factors, decided that it was in the child's best interest to have her biological father's name. Based upon our deferential standard of review, there is no showing of an abuse of discretion.

[¶22.] The Court effectively retries the case and substitutes its judgment for that of the trial court. First, the Court rejects the trial court's finding that using her stepfather's last name would contribute to the estrangement of the child from the child's father. Clearly there was evidence in the record to support the trial

court's finding of possible estrangement. The only witnesses were the father and the mother with little dispute as to the facts. The mother's husband did not testify; nor did Mother dispute the testimony concerning the past strained relationship between the parties. After noting that the husband did not testify, the judge stated he was "a little bit concerned about the family relationship there" and made the following comment:

> I believe that [preserving Father's parental relationship with L.M.G.] was initially resisted by [Mother], and perhaps her husband as well, for a number of factors and a number of reasons. And I think for a period of time there was an effort to prevent [Father] from asserting his parental rights simply because of the difficulty of the facts and circumstances in this case.

Specifically, the judge noted the history of stepfather's interference with the child's relationship with her biological father. Initially, Mother and Husband pushed Father to give up his parental rights. At one of the scheduled visitations, Father and Husband engaged in a physical exchange because Husband declared that he was the child's father and that would never change. Father's testimony also revealed that he had experienced trouble maintaining a relationship with the child because of the conflict with Mother and Husband. Father testified that he, Mother and Husband had several disagreements in the past. As a result, Father had to retrieve L.M.G. at the law enforcement center for visitations. Father testified that he had not been allowed to develop a relationship with his daughter until a month before the hearing. Father commented that up until that time, "[L.M.G.] had no heritage from her biological father. . . . I don't even think my daughter realized I was dad and that was very obvious."

[¶23.]      The Court believes the trial court placed undue importance on the historical attempt at estrangement because there was evidence that the situation "was improving." Deciding what is in the best interest of a child almost always involves consideration of past actions by the parents. Since a trial judge does not have a crystal ball to tell the future, he or she is left to decide the best interests of a child based, in part, upon previous and current actions of the parents. Here there were only two witnesses, Mother and Father. The judge was in the best position to observe their demeanor, manner of testifying and credibility and to decide the weight to give to their testimony. *See* Edinger v. Edinger, 2006 SD 103, ¶15, 724 NW2d 852, 857 (additional citations omitted). We are not to substitute our opinions as to the weight and credibility of the evidence. *Id*. This is inappropriate and contrary to our established deference to the trial judge.

[¶24.]      Likewise, the Court decides that the trial judge did not consider the child's "potential embarrassment" of having a different name than her "immediate family unit." Although the judge may not have used those particular words, he obviously considered that the child would have a different surname than her mother and half-sibling. Notwithstanding, the judge specifically noted that the child had only used the surname twenty months and that the surname was the stepfather's surname, not the biological father's surname. How much embarrassment that may cause the child is debatable and not established by the record. With the high divorce rate and increased numbers of blended families, it is not unusual for a child to have a different surname than the child's mother or half-siblings. The trial court noted that "families are becoming more diverse all the time." This Court has noted

that "[t]he traditional 'Cleaver' family is becoming less and less common in contemporary society." Meldrum v. Novotny, 2002 SD 15, ¶66, 640 NW2d 460, 473 (Amundson, J., concurring specially). The judge considered this factor along with all the other factors in arriving at his decision, but gave greater weight under the circumstances to fostering a good father-daughter relationship. The judge was persuaded that retaining the husband-stepfather's surname would strain the child's relationship with her biological father.

[¶25.] In addition to the concern of interference with the father-daughter relationship, the trial court was also concerned about the possibility of future separation of Mother and Husband. The trial court noted as follows:

> [T]here is no guarantee that [Mother and Husband] will maintain a long-term relationship in light of what has transpired and what may transpire in the future. I think the last thing we need is for the child to experience having separation should that occur and then have to deal at that point with the name change, whether or not she would want to retain the [husband's] name or go to the [father's] name at that point.

Although the parties had recently improved their relationship, the judge had concerns that their future relationship would involve conflict. This was hardly speculation considering the parties' past history and the volatile circumstances surrounding L.M.G.'s conception. It would be equally speculative to assume that the parties will suddenly maintain and foster a harmonious relationship. The trial court recognized the danger of such speculation when it changed L.M.G.'s surname to reflect her biological father's name in order to "foster a stronger bond with the non-custodial parent and preserve the relationship without question."

[¶26.] Whether the child's surname is different from the custodial parent's name is only one factor in analyzing what is in the child's best interest. This analysis involves assessing the totality of the child's individual circumstances. Block v. Bartelt, 1998 SD 65, ¶11, 580 NW2d 152, 154. When the totality of L.M.G.'s circumstances is considered, the trial court's decision was not clearly against reason and evidence. Past visitation problems which had threatened Father's relationship with his daughter and future uncertainty as to the viability of the relationship between Mother and Husband weighed heavily in the court's decision. Mother and Husband's past obstruction of the father-daughter relationship as well as the instability of Mother's marriage were certainly valid considerations in determining the best interest of the child in this case.

[¶27.] We should not try to second guess the judge's observations or retry the case or reweigh the factors – that is clearly the trial judge's job. As the Court cites, "An abuse of discretion occurs when discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence." *See* Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76 (additional citations omitted). Judge Tiede's decision was not an abuse of discretion, it was reasonable and justified by the evidence. I would affirm.

ZINTER, Justice (dissenting).

[¶28.] I join Justice Meierhenry's dissent. I write to add one additional fact supporting the trial court's decision. I also write to explain how this decision, without so stating, has eliminated our multifactor approach to determining when a change of name is in the best interests of the child.

#24093

[¶29.] First, although Justice Meierhenry has more than adequately demonstrated substantial factual support for the trial court's reasoned decision, one additional fact should be mentioned. In explaining his reasons for requesting the name change, Father, who had K-12 licensure, explained that at twenty months of age a child does not understand heritage and:

> That's why I'm looking for the name change now so [L.M.G.] understands that as she gets older and there isn't this aspect of, well, I was and wasn't. She really doesn't know how to spell any name right now. She can't write letters, she can't spell. This is the perfect time to have a name change; not 15 years later.

[¶30.] Second, today the Court, without acknowledging it, has abandoned the multifactor approach we have consistently applied for name change cases. *See* Block v. Bartelt, 1998 SD 65, 580 NW2d 152 (applying six factors); Blase v. Brewer, 2005 SD 7, 692 NW2d 785 (same); Minnig v. Nelson, 613 NW2d 24, 27 (NebCtApp 2000) (listing four additional factors including the identification of the child as a part of a "family unit"). *See also supra* ¶7 n3. It has abandoned the multifactor approach because, despite the Court's concession that the trial court did "consider the appropriate factors," *supra* ¶13, the Court reverses on just one[4] factor: the

---

4. Although the Court makes passing references to the stability of Mother and Husband's relationship, *see supra* ¶¶13-14, the Court dismisses the trial court's finding of a troubled relationship on the basis of speculation. *Supra* ¶14. However, as Justice Meierhenry notes, only Mother and Father testified, and the trial court was required to make this finding on the only evidence available: the history of the relationship and Mother's prediction of the future. Apparently, this Court is more comfortable speculating that Mother and Husband's relationship will endure based on Mother's prediction, rather than the historical evidence. In any event, only the trial court heard these parties testify, and therefore, I would afford the trial court its due deference on this factual dispute. For the same reason, we should defer to

(continued . . .)

-13-

majority's adoption of a "family unit" test for determining the child's best interests.

*See supra* ¶¶10-13, 17.  The Court reverses opining:

> [I]t is in the child's best interest to keep the surname she has
> had for two years because it is the name of "her family unit.". . .
> It makes no sense to change her name after two years to her
> natural Father's name.  From the standpoint of her best
> interest, her name should remain the same as her family unit
> because she socializes with them, will go to school with them
> and live with them the majority of the time.  Why should she be
> unnecessarily required to explain why her surname is different
> from her family unit in all these circumstances? . . .
>
> It would be in the best interest of L.M.G. to have the same name
> as her half-sister and the family she lives with most of the time.
> She would not have to explain why her name is different than
> her half-sister if she keeps her current surname.[5]

*Supra* ¶¶ 10-11, 17.  The Court's reliance on this sole factor is at odds with our multifactor approach.

[¶31.]    This Court has previously ruled, in a variety of contexts, that no single factor is determinative in these types of multi-factor approaches.  *See* Great West Casualty Co. v. Bergeson, 1996 SD 73, ¶6, 550 NW2d 418, 420 (stating that when determining whether an employment relationship exists "[n]o single factor can be

---

(. . . continued)
> the trial court on the finding regarding Husband and Mother's interference
> with Father's attempt to establish a relationship with the child.

5.    It is just as valid to question why, when she is with her friends and acquaintances, should she be "unnecessarily required" to explain why her surname is not the same as her biological Father who is going to become a significant part of this child's life.  *See supra* ¶11.  Does this Court really believe that L.M.G. will not have to explain these facts of life because of the "family unit" or that the explanations will be different depending upon the surname she bears?  Although the Court reverses because of the "potential embarrassment" L.M.G. may incur by having a "different" surname, *see supra* ¶¶13, 17, the unfortunate reality is that the potential for embarrassment will occur no matter what surname she is given.

determinative; each case must be decided on its own facts"). Rather, in domestic relations cases, great emphasis is placed on whether the trial court considered *all* of the factors. Arneson v. Arneson, 2003 SD 125, ¶26, 670 NW2d 904, 914 (concluding trial court did not abuse its discretion when "the court properly considered the relevant factors in making its custody determination"); Christians v. Christians, 2001 SD 142, ¶19, 637 NW2d 377, 381 (affirming alimony award when findings supported by the record "show[ed] a consideration of all factors"). Here, the Court abandons the multifactor approach even after acknowledging that the trial court did consider all of the factors that are used as a guide in determining a child's best interest.

[¶32.] It must finally be noted that the Court contends that the trial court failed to consider "the difficulties, harassment, or embarrassment the child may experience from the proposed surname." *See supra* ¶17. However, this seventh factor is derived from *Minnig,* a Nebraska case that had not been adopted by this Court at the time of trial. *See* 613 NW2d at 27. Although today's Court incorporates the additional factors set out in *Minnig,* the trial court cannot be faulted for failing to consider something that it was not required to consider at the time of trial. But even more importantly, even if the trial court did fail to address one factor, that alone does not justify reversal under the multifactor approach when "the decision [is] balanced and methodical." *See* Zepeda v. Zepeda, 2001 SD 101, ¶13, 632 NW2d 48, 53.

[¶33.] For all of the foregoing reasons, I dissent.