SABERS, Justice (on reassignment).
[¶ 1.] We determine whether a trial court abused its discretion in ordering the name change of L.M.G. from W.G.’s (Mother) married name to R.P.’s (Father) surname. L.M.G. was conceived during an affair between Mother and Father. Mother was married at the time and eventually reconciled with her husband. Mother listed her husband’s surname on daughter’s birth certificate. Father subsequently petitioned to change daughter’s surname to his own. After the trial court ordered *73 L.M.G.’s surname name to be changed to Father’s surname, Mother appealed. We reverse.
FACTS
[¶2.] In 2003, L.M.G. was conceived during an affair between her mother of Sioux Falls, South Dakota and her father of Worthington, Minnesota, after Father responded to Mother’s personal ad on an internet site. Although Mother’s internet profile indicated that she was “single,” she was actually married to C.G. (Husband) but the couple had no children at the time.[1] Father and Mother had a relationship for approximately seven months with Mother staying overnight at Father’s house three or four nights per week.
[¶ 3.] Father testified at trial that he did not discover that Mother was married until shortly after the child was conceived. Although Mother told Father she had been in a bad marriage for five years and wanted out, she felt her religious beliefs would not allow her to leave her husband. In January of 2004, Mother informed Father that she had decided to reconcile with Husband.
[¶ 4.] L.M.G. was born on March 12, 2004. Mother put her husband’s surname, which is her own surname, on the child’s birth certificate. Subsequently, both Father and Husband agreed to paternity testing, which verified that Father was the biological father of the child. Father then sought visitation, which was granted. Initially, Father was allowed to visit L.M.G. for two hours three times a week with a three-hour visit on Sundays. When the child was six months old, Father’s visitation increased to three hours three times a week and four hours on Sunday. Father would drive to Sioux Falls, South Dakota from Worthington, Minnesota on the weekdays for visitation and Mother would meet him halfway on Sundays.
[¶ 5.] In August 2005, Father filed a petition to change his daughter’s surname to his, which Mother challenged. During this time, Mother and Husband had a child together.[2] At the January 2006 hearing, the only evidence regarding which name was in the best interest of the child came from the testimony of Father and Mother. No one else testified. Based on their testimony, the trial court concluded that it was in the best interest of the child to change her surname to that of her biological father. The trial court also awarded Father joint legal custody. Mother appeals and raises the following issue:
Whether the trial court erred in changing the name of L.M.G.
STANDARD OF REVIEW
[¶ 6.] In cases where we review a lower court’s decision based on the best interest of the child, the “[tjrial court[] possess[es] broad discretion in deciding the best interests of a child; [its] decision will only be disturbed upon a finding of abuse of discretion.” People ex rel. C.G., 2003 SD 78, ¶ 12, 667 N.W.2d 279, 282. “An abuse of discretion occurs when 'discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence.’ ” Miller v. Jacobsen, 2006 *74 SD 33, ¶ 18, 714 N.W.2d 69, 76 (additional citations omitted).
[¶ 7.] The issue of what surname a child should use is guided by a determination of what is in the best interest of the child. Block v. Bartelt, 1998 SD 65, ¶ 11, 580 N.W.2d 152, 154. In a name change, what is in the best interest of the child involves several factors. Id.; see also Blase v. Brewer, 2005 SD 7, ¶ 13, 692 N.W.2d 785, 788. These factors include, but are not limited' to:
(1) misconduct by one of the parents; (2) failure to support the child; (3) failure to maintain contact with the child; (4) the length of time the surname has been used; (5) whether the surname is different from that of the custodial parent. Cohee [v. Cohee, 210 Neb. 855] 317 N.W.2d [381] at 384 [(1982)]. The court may also consider whether a particular name will contribute “to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship.” In re Marriage of Nguyen, 684 P.2d 258, 260 (Colo.Ct.App.1983), cert. denied, 469 U.S. 1108, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985).
Block, 1998 SD 65, ¶ 11, 580 N.W.2d at 154.[3] A mother gets no advantage from the unilateral act of naming a child at birth, nor does the father obtain an advantage from the custom of giving a child the father’s surname. Id.
[¶ 8.] The trial court made the following findings of facts:
1. That the court has determined that the Petitioner and Respondent committed adultery, which resulted in the birth of the child pertaining to this matter.
2. That the court has determined that the Petitioner has supported the child since shortly after her birth.
3. That the Petitioner sought to establish his rights as a father and to obtain contact and maintain contact with the child shortly after her birth.
4. The child is approximately 20 months old and has had the same surname since her birth.
5. At this point, the child has the same surname as the Respondent/custodial parent, but this surname is also the surname of the stepfather, and not the surname of the biological father of the child.
6. That the Petitioner has shown to the court that he wishes to foster and preserve the parental relationship and that permitting the child to retain the surname of the stepfather will contribute to the estrangement of the child from Petitioner.
[¶ 9.] Mother argues that the judge abused his discretion because most of the findings of fact are neutral and the findings that favor Father are clearly erroneous. She specifically disputes the finding that Using her husband’s last name would contribute to the estrangement of the child from the child’s father. We agree that the decision to change L.M.G.’s *75 name is an abuse of discretion because the trial court failed to view this situation from the standpoint of the child’s best interest.
[¶ 10.] In this case, it is in the child’s best interest to keep the surname she has had for two years because it is the name of “her family unit.” It is her Mother’s name, her half-sister’s name, her stepfather’s name and her name.
[¶ 11.] It makes no sense to change her name after two years to her natural Father’s name. From the standpoint of her best interest, her name should remain the same as her family unit because she socializes with them, will go to school with them and live with them the majority of the time. Why should she be unnecessarily required to explain why her surname is different from her family unit in all these circumstances?
[¶ 12.] In contrast, when she is with her natural father, there would be very few instances where the question would even come up to require an explanation. Therefore, when viewed from the child’s standpoint, the trial court abused its discretion in changing her name.
[¶ 13.] Although the trial court considered the appropriate factors, it abused its discretion for the following reasons. First, the trial court placed undue importance on the supposed instability of Mother and Husband’s marital relationship. Second, it disregarded the parties’ testimony that the relationship between all the parties was improving and emphasized the prior bad aspects of the parties’ relationship with one another. Third, as indicated, the trial court failed to consider the potential embarrassment L.M.G. may suffer by having a different surname than her immediate family unit.
[¶ 14.] The trial court made several findings of facts in relation to the factors. The trial court found there was a historically troubled relationship between Mother and Husband. It voiced concerns that Mother and Husband could divorce and then L.M.G. would be left with a surname that was not Mother’s. However, this is a speculative finding and actually could be used in any case where Mother wants to use her Husband’s name. There is always the possibility of divorce. We could just as easily speculate that in the event of a divorce, Mother could keep Husband’s surname and L.M.G. would still have the same name as .her Mother. See Block, 1998 SD 65, ¶ 13, 580 N.W.2d at 154 (affirming the circuit court’s dismissal of father’s name change petition where the child’s surname came from the Mother’s second ex-husband because she used that name for business and the name is shared with her other sons).
[¶ 15.] The trial court placed undue influence on the fact that L.M.G.’s current surname is that of her stepfather. This name is also Mother’s chosen name. The fact that it could change is speculation and highly irrelevant in the inquiry of the child’s best interest. Emphasis on the fact it is stepfather’s surname is improper concern for Father’s interest in replacing stepfather’s name with his own name, and is not in the child’s best interest.
[¶ 16.] Furthermore, the trial court noted that Husband and Mother had initially resisted Father’s attempts at asserting his parental rights. However, there was no testimony that the current state of the parties’ relationship was hostile. Indeed, the opposite testimony was given. Father was getting increasing visitation and the parties had settled that increase on their own. Father testified the parties “are improving our relationship all the time.” He also testified that a name change would not change his and L.M.G.’s relationship and that they have a great relationship right now. Mother testified *76 the situation was hard at first, but things have improved. The trial court’s worry about unstable relationship and continued estrangement between the parties does not conform to the current state of the evidence.
[¶ 17.] Finally, the trial court failed to consider “the difficulties, harassment, or embarrassment the child may experience from the proposed surname” and the fact L.M.G. will have a different name and be alienated in her family unit. See Minnig, 613 N.W.2d at 27 (noting the trial court should consider the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname). L.M.G resides principally with her Mother and she currently has the same name as her half-sister, Mother and stepfather with whom she lives the majority of the time. Her half-sister is close to her age and will be attending school about the same time as L.M.G. It would be in the best interest of L.M.G. to have the same name as her half-sister and the family she lives with most of the time. She would not have to explain why her name is different than her half-sister if she keeps her current surname. As indicated, while she is with Father, it is unlikely a different name would even be noticed.
[¶ 18.] For these reasons, the trial court abused its discretion in ordering L.M.G.’s name to be changed. We reverse.
[¶ 19.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.
[¶ 20.] ZINTER and MEIERHENRY, Justices, dissent.

. Mother and Husband now have a child together. She is within two years of L.M.G.

. Mother testified at the hearing:
[L.M.G.] now has a younger sister. We just had a child two months ago and they are within two years of each other, which means they will be close together in school. They’ll be involved in activities together and I feel it would alienate [L.M.G.] to have a different last name than her younger sibling, as well as any future siblings she may have, as well as a different last name than myself and her stepfather when she lives within a cohesive family.

. We adopted these factors from the Nebraska case of Cohee. 317 N.W.2d at 384. The Nebraska Appellate Court has since noted additional factors to consider. They are: “(6) a child's reasonable preference for one of the surnames; ... (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.” Minnig v. Nelson, 9 Neb.App. 427, 613 N.W.2d 24, 27 (2000). The court further recognized as an important factor "the possibility that a different surname may cause insecurity or a lack of identity....” Id.