MEIERHENRY, Justice
(dissenting).
[¶ 21.] I dissent. The question before this Court is whether the trial court abused its discretion. It is well established that in cases where we review a lower court’s decision based on the best interests of the child, “[the] trial court[] possesses] broad discretion in deciding the best interests of a child.” People ex rel. C.G., 2003 SD 78, ¶12, 667 N.W.2d 279, 282. We may only overturn the trial judge’s decision when the record reflects an abuse of discretion, “not merely [a decision] which might have been made differently if done [] as the initial fact finder.” Iversen v. Wall Bd. of Education, 522 N.W.2d 188, 193 (S.D.1994). Here the trial court, considering the appropriate factors, decided that it was in the child’s best interest to have her biological father’s name. Based upon our deferential standard of review, there is no showing of an abuse of discretion.
[¶ 22.] The Court effectively retries the case and substitutes its judgment for that of the trial court. First, the Court rejects the trial court’s finding that using her stepfather’s last name would contribute to the estrangement of the child from the child’s father. Clearly there was evidence in the record to support the trial court’s finding of possible estrangement. The only witnesses were the father and the mother with little dispute as to the facts. The mother’s husband did not testify; nor did Mother dispute the testimony concerning the past strained relationship between the parties. After noting that the husband did not testify, the judge stated he was “a little bit concerned about the family relationship there” and made the following comment:
I believe that [preserving Father’s parental relationship with L.M.G.] was initially resisted by [Mother], and perhaps her husband as well, for a number of factors and a number of reasons. And I think for a period of time there was an effort to prevent [Father] from asserting his parental rights simply because of the *77 difficulty of the facts and circumstances in this case.
Specifically, the judge noted the history of stepfather’s interference with the child’s relationship with her biological father. Initially, Mother and Husband pushed Father to give up his parental rights. At one of the scheduled visitations, Father and Husband engaged in a physical exchange because Husband declared that he was the child’s father and that would never change. Father’s testimony also revealed that he had experienced trouble maintaining a relationship with the child because of the conflict with Mother and Husband. Father testified that he, Mother and Husband had several disagreements in the past. As a result, Father had to retrieve L.M.G. at the law enforcement center for visitations. Father testified that he had not been allowed to develop a relationship with his daughter until a month before the hearing. Father commented that up until that time, “[L.M.G.] had no heritage from her biological father.... I don’t even think my daughter realized I was dad and that was very obvious.”
[¶ 23.] The Court believes the trial court placed undue importance on the historical attempt at estrangement because there was evidence that the situation “was improving.” Deciding what is in the best interest of a child almost always involves consideration of past actions by the parents. Since a trial judge does not have a crystal ball to tell the future, he or she is left to decide the best interests of a child based, in part, upon previous and current actions of the parents. Here there were only two witnesses, Mother and Father. The judge was in the best position to observe their demeanor, manner of testifying and credibility and to decide the weight to give to their testimony. See Edinger v. Edinger, 2006 SD 103, ¶ 15, 724 N.W.2d 852, 857 (additional citations omitted). We are not to substitute our opinions as to the weight and credibility of the evidence. Id. This is inappropriate and contrary to our established deference to the trial judge.
[¶ 24.] Likewise, the Court decides that the trial judge did not consider the child’s “potential embarrassment” of having a different name than her “immediate family unit.” Although the judge may not have used those particular words, he obviously considered that the child would have a different surname than her mother and half-sibling. Notwithstanding, the judge specifically noted that the child had only used the surname twenty months and that the surname was the stepfather’s surname, not the biological father’s surname. How much embarrassment that may cause the child is debatable and not established by the record. With the high divorce rate and increased numbers of blended families, it is not unusual for a child to have a different surname than the child’s mother or half-siblings. The trial court noted that “families are becoming more diverse all the time.” This Court has noted that “[t]he traditional ‘Cleaver’ family is becoming less and less common in contemporary society.” Meldrum v. Novotny, 2002 SD 15, ¶ 66, 640 N.W.2d 460, 473 (Amundson, J., concurring specially). The judge considered this factor along with all the other factors in arriving at his decision, but gave greater weight under the circumstances to fostering a good father-daughter relationship. The judge was persuaded that retaining the husband-stepfather’s surname would strain the child’s relationship with her biological father.
[¶ 25.] In addition to the concern of interference with the father-daughter relationship, the trial court was also concerned about the possibility of future separation of Mother and Husband. The trial court noted as follows:
*78 [T]here is no guarantee that [Mother and Husband] will maintain a long-term relationship in light of what has transpired and what may transpire in the future. I think the last thing we need is for the child to experience having separation should that occur and then have to deal at that point with the name change, whether or not she would want to retain the [husband’s] name or go to the [father’s] name at that point.
Although the parties had recently improved their relationship, the judge had concerns that their future relationship would involve conflict. This was hardly speculation considering the parties’ past history and the volatile circumstances surrounding L.M.G.’s conception. It would be equally speculative to assume that the parties will suddenly maintain and foster a harmonious relationship. The trial court recognized the danger of such speculation when it changed L.M.G.’s surname to reflect her biological father’s name in order to “foster a stronger bond with the noncustodial parent and preserve the relationship without question.”
[¶ 26.] Whether the child’s surname is different from the custodial parent’s name is only one factor in analyzing what is in the child’s best interest. This analysis involves assessing the totality of the child’s individual circumstances. Block v. Bartelt, 1998 SD 65, ¶ 11, 580 N.W.2d 152, 154. When the totality of L.M.G.’s circumstances is considered, the trial court’s decision was not clearly against reason and evidence. Past visitation problems which had threatened Father’s relationship with his daughter and future uncertainty as to the viability of the relationship between Mother and Husband weighed heavily in the court’s decision. Mother and Husband’s past obstruction of the father-daughter relationship as well as the instability of Mother’s marriage were certainly valid considerations in determining the best interest of the child in this case.
[¶ 27.] We should not try to second guess the judge’s observations or retry the case or reweigh the factors — that is clearly the trial judge’s job. As the Court cites, “An abuse of discretion occurs when discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence.” See Miller v. Jacobsen, 2006 SD 33, ¶ 18, 714 N.W.2d 69, 76 (additional citations omitted). Judge Tiede’s decision was not an abuse of discretion, it was reasonable and justified by the evidence. I would affirm.