ZINTER, Justice
(dissenting).
[¶ 28.] I join Justice Meierhenry’s dissent. I write to add one additional fact supporting the trial court’s decision. I also write to explain how this decision, without so stating, has eliminated our mul-tifactor approach to determining when a change of name is in the best interests of the child.
[¶ 29.] First, although Justice Meier-henry has more than adequately demonstrated substantial factual support for the trial court’s reasoned decision, one additional fact should be mentioned. In explaining his reasons for requesting the name change, Father, who had K-12 licen-sure, explained that at twenty months of age a child does not understand heritage and:
That’s why I’m looking for the name change now so [L.M.G.] understands that as she gets older and there isn’t this aspect of, well, I was and wasn’t. She really doesn’t know how to spell any name right now. She can’t write letters, she can’t spell. This is the perfect time to have a name change; not 15 years later.
[¶ 30.] Second, today the Court, without acknowledging it, has abandoned the mul- *79 tifactor approach we have consistently applied for name change cases. See Block v. Bartelt, 1998 SD 65, 580 N.W.2d 152 (applying six factors); Blase v. Brewer, 2005 SD 7, 692 N.W.2d 785 (same); Minnig v. Nelson, 9 Neb.App. 427, 613 N.W.2d 24 (2000) (listing four additional factors including the identification of the child as a part of a “family unit”). See also supra ¶ 7 n. 3. It has abandoned the multifactor approach because, despite the Court’s concession that the trial court did “consider the appropriate factors,” supra ¶ 13, the Court reverses on just one[4] factor: the majority’s adoption of a “family unit” test for determining the child’s best interests. See supra ¶¶ 10-13, 17. The Court reverses opining:
[I]t is in the child’s best interest to keep the surname she has had for two years because it is the name of “her family unit.”... It makes no sense to change her name after two years to her natural Father’s name. From the standpoint of her best interest, her name should remain the same as her family unit because she socializes with them, will go to school with them and live with them the majority of the time. Why should she be unnecessarily required to explain why her surname is different from her family unit in all these circumstances?
[[Image here]]
It would be in the best interest of L.M.G. to have the same name as her half-sister and the family she lives with most of the time. She would not have to explain why her name is different than her half-sister if she keeps her current surname.[5]
Supra ¶¶ 10-11, 17. The Court’s reliance on this sole factor is at odds with our multifactor approach.
[¶ 31.] This Court has previously ruled, in a variety of contexts, that no single factor is determinative in these types of multi-factor approaches. See Great West Casualty Co. v. Bergeson, 1996 SD 73, ¶ 6, 550 N.W.2d 418, 420 (stating that when determining whether an employment relationship exists “[n]o single factor can be determinative; each case must be decided on its own facts”). Rather, in domestic relations cases, great emphasis is placed on whether the trial court considered all of the factors. Arneson v. Arneson, 2003 SD 125, ¶ 26, 670 N.W.2d 904, 914 (concluding trial court did not abuse its discretion when “the court properly considered the *80 relevant factors in making its custody determination”); Christians v. Christians, 2001 SD 142, ¶ 19, 637 N.W.2d 377, 381 (affirming alimony award when findings supported by the record “show[ed] a consideration of all factors”). Here, the Court abandons the multifactor approach even after acknowledging that the trial court did consider all of the factors that are used as a guide in determining a’ child’s best interest.
[¶ 32.] It must finally be noted that the Court contends that the trial court failed to consider “the difficulties, harassment, or embarrassment the child may experience from the proposed surname.” See supra ¶ 17. However, this seventh factor is derived from Minnig, a Nebraska case that had not been adopted by this Court at the time of trial. See 613 N.W.2d at 27. Although today’s Court incorporates the additional factors set out in Minnig, the trial court cannot be faulted for failing to consider something that it was not required to consider at the time of trial. But even more importantly, even if the trial court did fail to address one factor, that alone does not justify reversal under the multi-factor approach when “the decision [is] balanced and methodical.” See Zepeda v. Zepeda, 2001 SD 101, ¶ 13, 632 N.W.2d 48, 53.
[¶ 33.] For all of the foregoing reasons, I dissent.

. Although the Court makes passing references to the stability of Mother and Husband's relationship, see supra ¶¶ 13-14, the Court dismisses the trial court’s finding of a troubled relationship on the basis of speculation. Supra ¶ 14. However, as Justice Meier-henry notes, only Mother and Father testified, and the trial court was required to make this finding on the only evidence available: the history of the relationship and Mother’s prediction of the future. Apparently, this Court is more comfortable speculating that Mother and Husband’s relationship will endure based on Mother’s prediction, rather than the historical evidence. In any event, only the trial court heard these parties testify, and therefore, I would afford the trial court its due deference on this factual dispute. For the same reason, we should defer to the trial court on the finding regarding Husband and Mother’s interference with Father’s attempt to establish a relationship with the child.

. It is just as valid to question why, when she is with her friends and acquaintances, should she be “unnecessarily required” to explain why her surname is not the same as her biological Father who is going to become a significant part of this child’s life. See supra ¶ 11. Does this Court really believe that L.M.G. will not have to explain these facts of life because of the “family unit” or that the explanations will be different depending upon the surname she bears? Although the Court reverses because of the “potential embarrassment” L.M.G. may incur by having a "different” surname, see supra ¶¶ 13, 17, the unfortunate reality is that the potential for embarrassment will occur no matter what surname she is given.